**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5841

FREDERICK KEITH SINGLETON,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CR-95-179)

Argued: November 1, 1996

Decided: February 28, 1997

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed in part and remanded by published opinion. Judge Niemeyer
wrote the opinion, in which Judge Michael and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** David Benjamin Smith, ENGLISH & SMITH, Alexan-
dria, Virginia, for Appellant. Robert Clifford Chesnut, Assistant
United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen
F. Fahey, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Alexandria, Virginia, for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

During the course of his criminal trial, Frederick Singleton sought to fire his court-appointed counsel because he was "not satisfied" with the way his counsel was cross-examining witnesses. When the court indicated the benefits of counsel, advising Singleton that he would be held strictly to the rules of court, Singleton sought to have counsel remain to assist him as a "legal adviser." After being told by the court that it would not permit such a hybrid situation, Singleton fired his counsel and conducted the remainder of his trial himself, consulting with his fired attorney during breaks. The jury convicted Singleton of 16 of the 20 counts charged.

With counsel appointed to represent him on appeal, Singleton maintains that he was denied both his Sixth Amendment right to the assistance of counsel and his implied Sixth Amendment right to self-representation, defined in Faretta v. California , 422 U.S. 806 (1975), as well as a new constitutional right to have advisory counsel when a defendant elects to represent himself. He also contends that the district court miscalculated his criminal history for sentencing purposes. Because we find no constitutional right to have advisory counsel during self-representation and no error by the district court in applying Singleton's acknowledged Sixth Amendment rights, we affirm his conviction. We remand for resentencing, however, to permit the court to resolve an open sentencing issue.

I

Singleton was indicted in 20 counts for a series of armed robberies from May 1994 to January 1995 in the greater Washington, D.C., area. The indictment identified four separate occasions on which Singleton allegedly carjacked vehicles which he then used as get-away cars in four separate armored truck robberies.

Following his arrest, Singleton filed an affidavit of indigency, and the court appointed Alan H. Yamamoto as his attorney. Yamamoto represented Singleton, without complaint, until the second day of Singleton's three-day trial.

2

Trial began on July 11, 1995, and on the first day, the government presented 17 witnesses, including many of the victims of the carjackings and the armored truck holdups. Yamamoto cross-examined 15 of these witnesses. On the second day of trial, the government continued with the presentation of witnesses. As Yamamoto prepared to cross-examine the second witness, Singleton notified the court, through Yamamoto, that he was not satisfied with Yamamoto's cross-examination of witnesses and that he wanted to participate personally in cross-examination. He also requested permission to participate in closing argument. The district court denied these requests. When Singleton interjected personally, searching for a way to participate in his representation based on his right to fire his counsel, the court ruled:

> I will not let you participate in the trial. If you decide you want to discharge Mr. Yamamoto, I will deal with that when it occurs. I think you better think about that long and hard before you do it. If you do it, I will take that up when it happens.

After Singleton consulted briefly with Yamamoto, he announced to the court:

> I would like to fire my attorney, your Honor. I am in no way satisfied with the way he is cross-examining. I am not satisfied with the way he has been cross-examining witnesses.

Agreeing to let Singleton fire his attorney but cautioning him about the consequences and repeating his earlier ruling against a hybrid participation in the trial, the court stated:

> All right, I will allow you to discharge him.
>
> Before you make that final decision, I want you to know that there are certain things that he can assist you, through the calling of witnesses, as with regard to them taking the witness stand, and you are going to be held to the same rules as he would be held. I am not going to let you use this as an opportunity to argue with witnesses.

3

* * *

> You will either take it alone or you are not going to take it alone. I will not allow some hybrid.

Arguing for an advisory role for his court-appointed attorney, Singleton then initiated the following dialogue:

> Singleton: Could he assist me?

> The Court: I will not permit him to assist you. If you want to go ahead alone, you can do it. It will not be half and half.

> Singleton: Okay. Your Honor, what I am asking, he said he would let me use what witnesses he would call. He said he would assist me in that.

> The Court: I will not let him assist you at all. You wanted an attorney. He has been appointed for you, is here, and he will represent you. I will not let you take part of it and him take part of it. You would be allowed a time to get him to advise you. You make that choice. It is up to you.

* * *

> Singleton: I want to have him as a legal adviser.

> The Court: He will be your attorney or you will represent yourself. You make up your mind.

> Singleton: May I have a minute to talk to him again?

> The Court: Yes, take your time.

Following a private conversation between Singleton and Yamamoto, Singleton announced his decision to fire Yamamoto. The court excused Yamamoto as Singleton's court-appointed attorney and immediately resumed the trial, denying Singleton's request for a recess to familiarize himself with Yamamoto's files.

4

Singleton then proceeded to cross-examine the witness who had remained on the witness stand during the entire side bar discussion about Singleton's self-representation. Singleton thereafter cross-examined 15 government witnesses and put on 11 witnesses to testify on his own behalf. He also presented his own closing argument. Throughout the trial, Yamamoto voluntarily remained in the court-room, and Singleton spoke with him during some of the recesses (although these conversations are not on the record).

The jury convicted Singleton of 16 counts and deadlocked on 4 others which the government then dismissed. At Singleton's request, the court appointed Yamamoto to represent him during the sentencing phase of the trial. After the court found that Singleton was a career offender, it expressed regret that he was "really a waste of a bright talent. His performance when he was on his own at trial was fine. He unfortunately has other problems that the court can't resolve for him." The court sentenced Singleton to 210 months on all but the firearms counts and a consecutive 780 months on the four firearms counts.

II

On appeal, Singleton argues first that the district court failed to ensure that his decision to waive counsel and to represent himself was made "knowingly and intelligently" because it failed to make a "`searching or formal' inquiry into the defendant's understanding of his situation and his awareness of the dangers and disadvantages of self representation." Assuming arguendo that he effectively waived his right to counsel, Singleton next argues that we should order a new trial because the district court undermined his right of self-representation by refusing his request for a recess before beginning his representation of himself and by denying him Yamamoto's assistance in an advisory role. Finally, resting on a subtle interplay of his Sixth Amendment rights which emphasizes a right to the "assistance" of counsel, Singleton argues for a "constitutional right to conduct one's own defense" without having to give up his constitutional right to have the assistance of counsel in presenting that defense. He states, "[T]o force a defendant to completely waive his right to have the assistance of counsel for his defense as the price for exercising his right to represent himself plainly exacerbates the tension . . . between the constitutional right of self-representation and the . . . right to

5

counsel." Singleton thus appears to contend that the Sixth Amendment provides an implied constitutional right to advisory counsel when a defendant chooses to represent himself.

Before addressing these questions, we find it useful to review briefly the well-established scope of the right to counsel granted by the Sixth Amendment and the implied right to self-representation defined in Faretta v. California, 422 U.S. 806 (1975). The Sixth Amendment provides in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend. VI. That right is a fundamental procedural right of persons accused of crimes. Indeed, "[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Penson v. Ohio, 488 U.S. 75, 84 (1988) (quoting Walter V. Schaefer, Federalism and State Criminal Procedure, 70 Harv. L. Rev. 1, 8 (1956)). Because this right is crucial both to the individual defendant and to the integrity of our system of justice, the Sixth Amendment requires that counsel be provided for a defendant who cannot afford to retain private representation in any case in which he will be incarcerated if convicted. See Scott v. Illinois, 440 U.S. 367 (1979); see also Gideon v. Wainwright, 372 U.S. 335 (1963) (applying right to state non-capital felonies); Powell v. Alabama, 287 U.S. 45 (1932) (applying right to capital cases). But the Supreme Court has made clear that although courts are commanded to protect the right to counsel zealously, the defendant can waive the right if the waiver is knowing, intelligent, and voluntary. See Brady v. United States, 397 U.S. 742 (1970); Johnson v. Zerbst, 304 U.S. 458, 468 (1938).

Indeed, courts must take care not to force counsel upon a defendant, because in addition to the right to the assistance of counsel, the Sixth Amendment implicitly provides an affirmative right to self-representation. See Faretta, 422 U.S. at 806. And that right must be preserved even if the court believes that the defendant will benefit from the advice of counsel. See McKaskle v. Wiggins, 465 U.S. 168 (1984). As with the right to counsel, a defendant may waive his right to self-representation. Id. at 182. But no Supreme Court case has discussed in any detail the requirements for a waiver of the right to self-representation. This can, perhaps, be explained by recognizing that

6

courts have assumed that the right to self-representation and the right to representation by counsel, while independent, are essentially inverse aspects of the Sixth Amendment and thus that assertion of one constitutes a de facto waiver of the other. See , e.g., Faretta, 422 U.S. at 835 ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel"); Tuitt v. Fair , 822 F.2d 166 (1st Cir. 1987) (holding that the right to counsel and the right to self-representation are mutually exclusive and thus that granting the right to proceed pro se may be conditioned on unequivocal waiver of the right to counsel).

In order to preserve both the right to counsel and the right to self-representation, a trial court must proceed with care in evaluating a defendant's expressed desire to forgo the representation of counsel and conduct his own defense.

> A trial court evaluating a defendant's request to represent himself must "traverse . . . a thin line" between improperly allowing the defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation. A skillful defendant could manipulate this dilemma to create reversible error.

Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (citations omitted). Of the two rights, however, the right to counsel is preeminent and hence, the default position. Id. at 1028; United States v. Gillis, 773 F.2d 549, 559 (4th Cir. 1985); Tuitt, 822 F.2d at 174 ("Where the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless").

Because of the legal preeminence of the right to representation by counsel and the need to maintain judicial order, we have held that while the right to counsel may be waived only expressly, knowingly, and intelligently, "the right to self-representation can be waived by failure timely to assert it, or by subsequent conduct giving the appearance of uncertainty." Gillis, 773 F.2d at 559 (citations omitted). Consequently, if a defendant proceeds to trial with counsel and asserts his right to self-representation only after trial has begun, that right may

7

have been waived, and its exercise may be denied, limited, or conditioned. Accordingly, after trial has begun with counsel, the decision whether to allow the defendant to proceed pro se rests in the sound discretion of the trial court.[1] See Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990); United States v. Dunlap, 577 F.2d 867, 868 (4th Cir. 1978) (holding that a defendant does not have an absolute right to dismiss counsel and conduct his own defense after trial has begun because of need "to minimize disruptions, to avoid inconvenience and delay, to maintain continuity, and to avoid confusing the jury"); see also United States v. Lawrence, 605 F.2d 1321 (4th Cir. 1979) (where represented defendant first asserts right to self-representation only after jury had been selected though not sworn, decision to allow pro se representation rests in sound discretion of trial court); Chapman v. United States, 553 F.2d 886, 893 (5th Cir. 1977) (right to self-representation may be waived if not asserted before trial); Sapienza v. Vincent, 534 F.2d 1007, 1010 (2d Cir. 1976) (same); United States v. Dougherty, 473 F.2d 1113, 1123 (D.C. Cir. 1972) (right to self-representation "must be recognized if it is timely asserted, and accompanied by a valid waiver of counsel, and if it is not itself waived, either expressly, or constructively, as by disruptive behavior during trial").

With these principles in hand, we now proceed to decide first, whether Singleton waived his Sixth Amendment right to counsel; sec-

_____

[1] Even where the right to self-representation is properly and timely invoked, additional considerations may justify certain limits. In Faretta itself, the Supreme Court recognized that the right to self-representation could be subjugated if the defendant engaged in obstructionist conduct. 422 U.S. at 834 n.46. More recently, this circuit has held that even if a defendant charged with sexual abuse properly invoked his right to self-representation, the trial court did not err in refusing to allow him personally to cross-examine his alleged juvenile victims. The trial court offered him the opportunity to compose cross examination questions for counsel to pose. This court found that the purposes of self-representation -- to allow a defendant to affirm his dignity and autonomy and to present what he believes is his best possible defense -- were thus "otherwise assured" and that, therefore, the important state interest in protecting children from the emotional trauma of being questioned by their alleged abuser outweighed the defendant's right to conduct cross examination personally. Fields, 49 F.3d at 1034-36.

ond, whether Singleton's implied constitutional right to self-representation was unconstitutionally burdened by the imposition of conditions on its exercise; and finally, whether Singleton is constitutionally entitled to the appointment of advisory counsel or some other form of hybrid representation in connection with his self-representation.[2]

III

"The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson, 304 U.S. at 464. "[W]hether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record." Id. at 465. In accord with this instruction, we review the sufficiency of a waiver of the right to counsel by evaluating the complete profile of the defendant and the circumstances of his decision as known to the trial court at the time.[3] This determination can be made by examining the record as a whole. See United States v. King, 582 F.2d 888, 890 (4th Cir. 1978); Townes v. United States, 371 F.2d 930, 934 (4th Cir. 1966); Aiken v. United States, 296 F.2d 604, 607 (4th Cir. 1961).

_____

[2] Although Singleton has demanded a right to "advisory counsel," the role he envisioned for such counsel is not clear. From the dialogue with the district court, it appears that he was, at various times, suggesting a co-counsel or shared representation with such counsel, or a standby counsel role, or a pure advisory counsel role. Because we do not believe that the degree of participation by such advisory counsel is constitutionally significant, we intend no distinction in this opinion by use of "advisory counsel," "standby counsel," or "hybrid representation."

[3] Determination of a waiver of the right to counsel is a question of law, Brewer v. Williams, 430 U.S. 387, 397 n.4, 403-04 (1977), and thus we review it de novo. But see Fields, 49 F.3d at 1030-1032 (holding that question of whether defendant's statement was clear and unequivocal invocation of right to self-representation should be treated as finding of fact on habeas corpus review because of trial court's superior ability to evaluate factors such as manner in which statement was made).

9

Relying unduly on a fragment of dictum from Patterson v. Illinois, 487 U.S. 285 (1988), Singleton urges us to require that the district court make a "searching or formal" inquiry into a defendant's understanding of his situation and his awareness of the dangers and disadvantages of self-representation.**4** He argues that because the district court did not conduct such a searching or formal inquiry, he is entitled to a new trial.

Were such a procedural requirement to be imposed, it would particularly handicap trial judges who, as in the present case, are faced with a request to dismiss counsel at midtrial, a point where disruptive potential is great but the court has also had an opportunity to observe the defendant and thus to develop a basis for determining his competency to waive his right to counsel. For this reason, we decline the invitation to define a precise procedure or litany for this evaluation. Instead, we prefer to follow our approach in United States v. Gallop, 838 F.2d 105 (4th Cir. 1988), where we affirmed open court exploration of the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation but refused to treat the failure to conduct a formal inquiry as per se reversible error. We restated our agreement with the majority of circuits that "the trial judge is merely required to determine the sufficiency of the waiver from the record as a whole rather than from a formalistic, deliberate, and searching inquiry." Id. at 110.

In this case, the district court was abruptly presented with Singleton's mid-trial request to fire counsel, made while a government witness was on the stand awaiting cross examination. During the interchange that followed, Singleton carefully explored the parameters under which the court was willing to allow him to operate if he chose to dismiss counsel.**5** While the court, at that awkward moment,

_____

**4** In Patterson, the Court considered the conditions for a valid waiver of the right to counsel at a post-indictment interrogation. The Court described the inquiry made before acceptance of a waiver of the right to counsel at trial as "more searching or formal" than that required under the circumstances of the case before it. 487 U.S. at 298.
**5** Probing how he might be entitled to advisory counsel and at the same time to self-representation, Singleton asked the court at various times

10

did not conduct a formal inquiry, it did advise Singleton that he should think "long and hard" before firing counsel, noting that counsel would be of assistance to him. Singleton's own questions, proposing subtly differing options to use counsel during his own defense, leave no doubt that he understood that a trained attorney's specialized knowledge would be valuable to his defense, and the court's responses made clear that if Singleton dismissed counsel, he would be required on his own to follow the same rules of evidence and procedure as an attorney and would not be permitted to rely on Yamamoto or any other attorney, even in an advisory capacity.

What does not appear on the face of this interchange is direct evidence of Singleton's educational background, his understanding of the judicial process, and his appreciation of the charges against him and the potential penalties. But a fuller exploration of the history of this case demonstrates that Singleton also had the requisite appreciation of those factors to make an intelligent choice to proceed pro se.

Beginning with the nature of charges and the potential penalty, Singleton had earlier been adequately informed of these. He had been arraigned not once, but twice, providing two separate occasions on which the charges were explained to him. In fact, the second arraignment was necessitated by a superseding indictment issued to add a charge of escape after Singleton bolted from the courthouse following his first arraignment, an indication that he appreciated the gravity of the charges against him.

As for Singleton's appreciation of the judicial process, the district court observed that Singleton had not only seen but also judged attorneys in action throughout the first day of his ongoing trial, as well as

_____

during the course of the dialogue: "Do I, as a defendant, have a right to fire my attorney after a point?"; "If I were to fire him, I would or would not be able to continue by myself?"; "[If I fired counsel], would [he] be able to sit there and help me and advise me on the technicalities?"; "What I was specifically ask[ing], will the court be able to, if I want to make an objection, would I be able to object?"; "Could he assist me?"; "Okay, are you telling me I can't hire Mr. Yamamoto, to advise me, to assist me?"

11

at pretrial hearings, including a motion to suppress evidence.**6** Singleton had thus observed lawyers examining witnesses, making objections, and arguing legal motions before he chose to take on these tasks for himself.

Finally, with regard to Singleton's intelligence and education, the district court had ample opportunity to observe Singleton at trial as well as at pretrial hearings, including the motion to suppress. Moreover, Singleton's questions to the court in exploring his choice regarding counsel demonstrated an active intelligence. In fact, his eventual conduct of his defense, while undoubtedly handicapped by his lack of legal training and experience, was respectable, prompting the court at sentencing to lament the fall of such a"bright talent." The fuller record before us demonstrates that Singleton was a high school graduate who had worked successfully as an architectural draftsman and had started a mobile car washing and detailing business.

While it would have been our preference to have seen a more thorough colloquy in this case, even recognizing the minimal additional delay it might have caused, we nevertheless are satisfied that the record as a whole demonstrates that Singleton's decision to waive counsel was knowing, intelligent, and voluntary.

IV

Having found that the district court did not err in accepting Singleton's waiver of his right to counsel, we address Singleton's contention that the court nonetheless violated his constitutional right to self-representation by imposing "restrictions" on the exercise of the right, i.e., by denying Singleton's request for a recess to review trial materials prepared by Yamamoto and by refusing to allow Yamamoto to serve in an advisory role.

_____

**6** In fact, Singleton had also been represented by counsel at one prior state jury trial, as well as in prior plea agreements, although the record of the proceeding here in question does not clearly indicate that the district court was aware of this prior trial when he considered Singleton's request to dismiss counsel.

12

In evaluating the propriety of these restrictions, we take note of the procedural point at which Singleton's request to proceed pro se arose. Singleton's first indication that he wished to waive counsel was not given until the second day of his three-day trial. While he asserts that he had an implied constitutional right to self-representation, including a constitutional right to the assistance of advisory counsel, he omits any discussion of his possible waiver of these rights.

As we noted above, the right to self-representation can be waived. See McKaskle, 465 U.S. at 182; Gillis , 773 F.2d at 559. And if a defendant first asserts his right to self-representation after trial has begun, the right may have been waived. The decision at that point whether to allow the defendant to proceed pro se at all or to impose reasonable conditions on self-representation rests in the sound discretion of the trial court.

In this case, because Singleton clearly did not make a timely assertion of his Faretta right, the district court had discretion to limit it. Accordingly, we must determine whether imposing conditions (1) that Singleton would have no additional preparation time and (2) that he would not be allowed court-appointed advisory counsel constituted an abuse of discretion.

In considering the district court's refusal to grant a recess, we recall that Singleton's request to proceed pro se came unexpectedly, not only at mid-trial but at mid-testimony as a government witness awaited cross-examination by some representative of the defense. And a large number of additional witnesses were waiting to be called by both the prosecution and the defense. While we would not condone "unreasoning and arbitrary `insistence upon expeditiousness in the face of a justifiable request for delay,'" see Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (quoting Ungar v. Sarafite, 376 U.S. 575, 589 (1964)), in this case, the district court had a legitimate concern with trial management. It was under no obligation to allow Singleton to proceed pro se. If Singleton were unable to accept the condition of proceeding without recess, believing it to be too harsh, appointed counsel was prepared to remain as his representative. Indeed, the trial court's entire purpose in imposing this strict condition may have been to discourage Singleton from changing courses in mid-stream and pursuing his desire to represent himself.

13

Had Singleton asserted his Faretta right before trial, he would have had no disadvantage in preparation time. Furthermore, if that time were insufficient, the existing case law governing the granting of continuances might have afforded him yet more leisure to prepare his case. See Morris, 461 U.S. at 1; cf. United States v. Mullin, 32 F.3d 891, 896-97 (4th Cir. 1994) (total breakdown in communication prevented preparation of adequate defense and necessitated appointment of new attorney). But given the fact that both jury and witnesses were waiting expectantly, that the court was under no obligation to allow Singleton to begin representing himself at all at mid-trial, and that appointed counsel was prepared to try the case, we find no abuse of discretion in the judge's choice to condition the privilege of self-representation in this way.

By force of the same reasoning, we conclude that the district court did not abuse its discretion by imposing the condition that Singleton proceed without advisory counsel or some other form of hybrid representation so long as such representation is not an independent Sixth Amendment right. If Singleton felt too insecure or incapable of proceeding alone on his own behalf, Yamamoto remained willing and able to proceed as Singleton's court-appointed counsel.

In short, while Singleton had a constitutional right before trial to elect to represent himself without counsel, by proceeding to trial with court-appointed counsel, he gave up any right he may have had to require the court to permit him to proceed without counsel or to avoid reasonable conditions imposed by the court on proceeding without counsel.

V

Singleton's final and boldest argument is that the trial court infringed an implied Sixth Amendment right by refusing to appoint him advisory counsel to assist him in self-representation. It would appear that he claims this right as an independent Sixth Amendment right.

As noted previously, the Supreme Court and other courts have at least implied that the right to representation by counsel and the right to self-representation are mutually exclusive, and at least one circuit

14

has held this explicitly. See Faretta, 422 U.S. at 835; Tuitt, 822 F.2d at 177. Singleton argues, however, that "a defendant who chooses to exercise the right to represent himself is not by that very choice stripped of his even more important right to have the assistance of counsel in presenting his defense." To make this argument, he relies by implication on the following language from Faretta:

> [The counsel provision of the Sixth Amendment] speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant -- not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative. An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.

422 U.S. at 820-21 (citations omitted).

Although a court may, in its discretion, allow attorney participation similar to that advocated by Singleton, the Constitution does not mandate it. See, e.g., McKaskle, 465 U.S. at 183 (recognizing that while a court may appoint stand-by counsel, Faretta does not require it to permit "`hybrid' representation"); United States v. Sacco, 571 F.2d 791, 793 (4th Cir. 1978) (holding that defendant need not be granted permission to serve as co-counsel absent showing of special need,

15

even after <u>Faretta</u>).**7** Singleton would thus have us expand the <u>Faretta</u> right. But <u>Faretta</u> itself forecloses the proposal.

The <u>Faretta</u> Court clearly contemplated that the right to self-representation cannot be exercised without first eliciting a valid waiver of the right to counsel from the defendant. <u>See</u> 422 U.S. at 835. Furthermore, the Court explicitly stated that"a defendant who elects to represent himself cannot thereafter complain that the quality

_____

**7** The cases reiterating the principle that courts are not required to allow defendants to split the responsibilities of representation with an attorney are myriad. <u>See, e.g.</u>, <u>United States v. Tarantino</u>, 846 F.2d 1384, 1420 (D.C. Cir. 1988) ("[Defendant] seemed to desire some sort of hybrid form of representation, whereby both he and his appointed counsel would be permitted to examine witnesses, make objections, and argue motions. While the district court would have been within its discretion in permitting this practice, [defendant] did not have a constitutional right under the Sixth Amendment to combine self-representation with representation by counsel."); <u>United States v. Oakey</u>, 853 F.2d 551, 553 (7th Cir. 1988); <u>United States v. Romano</u>, 849 F.2d 812, 816 (3d Cir. 1988) (dictum); <u>see also United States v. Tutino</u>, 883 F.2d 1125, 1141 (2d Cir. 1989) ("The decision to grant or deny `hybrid representation' lies solely within the discretion of the trial court."); <u>United States v. Mosely</u>, 810 F.2d 93, 97-98 (6th Cir. 1987) ("[T]he question whether to allow a defendant to participate in his own defense along with counsel in `hybrid representation' is a matter committed to the sound discretion of the trial court."); <u>United States v. LaChance</u>, 817 F.2d 1491, 1498 (11th Cir. 1987) ("It is the law of this circuit that the right to counsel and the right to proceed <u>pro se</u> exist in the alternative and the decision to permit a defendant to proceed in a hybrid fashion rests in the sound discretion of the trial court."); <u>United States v. Norris</u> , 780 F.2d 1207, 1211 (5th Cir. 1986) ("[A] defendant does not have the right to a hybrid representation, in which he conducts a portion of the trial and counsel conducts the balance."); <u>United States v. Halbert</u>, 640 F.2d 1000, 1009 (9th Cir. 1981) ("A criminal defendant does not have an absolute right to both self-representation <u>and</u> the assistance of counsel."). In general, however, these cases lack substantial reasoning, relying instead on the statement in <u>McKaskle</u> that there is no constitutional requirement for a court "to permit `hybrid' representation of the type . . . actually allowed," which in that case consisted of both defendant and attorneys making arguments before the court and both defendant and attorneys participating in examination of witnesses. 465 U.S. at 183.

16

of his own defense amounted to a denial of `effective assistance of counsel,'" id. at 835 n.46, even though a long line of cases has clearly established that the right to representation by counsel means the right to effective assistance of counsel. By implication, at least, this indicates a waiver of the right to "effective assistance" by assertion of the right to self-representation.

Singleton's position would negate both of these conclusions. He would argue that to proceed pro se, a defendant would need only to assert his desire to participate in the presentation of his case, but need not be forced to give up his right to "assistance" from an attorney. But, if the right were a constitutional one, the defendant would have a right to make certain that any assistance of counsel that he received was effective -- even if the assistance were merely advisory. To institute such a regime, however, would redefine the role of counsel and would put courts in a nearly impossible position for determining what constitutes effective advice. A defendant could always argue that the attorney failed to advise him of everything that might improve his chances of winning or that the advice he received was unsound. The Constitution does not require such a manipulable and unwise arrangement.

The due process values which the Sixth Amendment protects provide additional support for the conclusion that the Constitution does not require a continuum of representational rights. In countless cases involving various aspects of the right to representation by counsel -- appointment for trial, effective assistance, appointment for first appeal as of right -- the Supreme Court has emphasized the crucial role of defense counsel in maintaining the integrity of our judicial process.[8]

_____

[8] See, e.g., Gideon v. Wainwright, 372 U.S. 335, 344 (1963) ("The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law."); Powell v. Alabama, 287 U.S. 45, 69 (1932) ("If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would

17

The provision of competent counsel for the defense not only improves the chances that the truth will be discerned and thus that individual verdicts will be correct, it also ensures that the mighty prosecutorial power of the state is justly exercised. Thus, representation by counsel does not merely tend to ensure justice for the individual criminal defendant, it marks the process as fair and legitimate, sustaining public confidence in the system and in the rule of law. In this sense, the Sixth Amendment right to counsel serves important public purposes.

By contrast, the right to self-representation identified in Faretta is concerned primarily with individual rights. Although, as the Supreme Court's many decisions regarding the right to counsel indicate, a pro se defendant most likely increases his risk of an unfavorable outcome, self-representation champions individual freedom of choice. See Faretta, 422 U.S. at 820. "The right to appear pro se exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense." McKaskle, 465 U.S. at 176-77.

Because the right to counsel serves both individual and collective good, it is appropriate to ascribe it a constitutional primacy which the more individualistic right of self-representation does not command. While respecting the right to self-representation requires the sacrifice of the systemic benefit of using trained defense lawyers as an additional guarantee of judicial fairness and legitimacy, the Sixth Amendment does not require that the defendant be permitted to use counsel as an instrument to distort the system. Yet, this is the door which Singleton's request would require us to open.

_____

be a denial of a hearing, and, therefore, of due process in the constitutional sense."); Douglas v. California, 372 U.S. 353 (1963) (holding that Fourteenth Amendment requires appointment of counsel on first appeal as of right); Anders v. California, 386 U.S. 738 (1967) (same); Penson v. Ohio, 488 U.S. 75, 84 (1988) ("The paramount importance of vigorous representation follows from the nature of our adversarial system of justice. This system is premised on the well-tested principle that truth -- as well as fairness -- is `best discovered by powerful statements on both sides of the question'").

18

We can foresee irreconcilable differences arising from the varying obligations of lawyer and defendant if the defendant were to have a constitutional right to have counsel appointed for any role he sees fit. As an officer of the court, the lawyer has obligations, including the duty of disclosure, the duty to ask only appropriate questions, and the duty not to suborn perjury, which have not been considered personally binding on the defendant. In addition, the lawyer's duty of attorney-client confidentiality could be seriously compromised by a system in which the defendant selectively employs his attorney while making his own defense. And in a case in which these conflicts or mere differences of strategy bubbled to the surface before the jury, the last hope of properly presenting the relevant facts to the trier of fact could quickly be obscured by the side show of internecine strife between the defendant and his counsel.

As the Court noted in McKaskle, "A defendant does not have a constitutional right to choreograph special appearances by counsel." 465 U.S. at 183. In this case, Singleton had the opportunity to proceed through the representation of competent counsel, at no cost to himself. He was also granted the opportunity to waive that right and to proceed pro se. But the district court was under no constitutional obligation to provide him any intermediate accommodation.**9**

Challenging the logic and the limits of the district court's ruling which denied him appointed counsel if he exercised his Faretta right to self-representation, Singleton offered "to hire" advisory counsel. During his dialogue with the court, he asked, "Are you telling me I can't hire Mr. Yamamoto to advise me, to assist me?" When the court asked whether Singleton was going to hire him, Singleton responded affirmatively, apparently seeking to persuade the court to allow him to use appointed counsel as he pleased. The court, surely recognizing that Singleton had not "hired" counsel, advised Singleton of his constitutional right to have an attorney, who will "run the case," and his freedom to waive that right and represent himself. The court summa-

_____

**9** We do not mean to suggest that a district court should hesitate to appoint standby counsel when the court in its discretion believes it appropriate. See Faretta, 422 U.S. at 834 n.46 (noting that a trial judge "may -- even over objection by the accused-- appoint a `standby' counsel to aid the accused if and when the accused requests help . . .").

19

rized, "He will be your attorney or you will represent yourself. You make up your mind." The court properly defined the limits of Singleton's constitutional rights and, we believe, properly exercised its discretion over the courtroom.

Singleton, apparently seeking to avoid the choice of alternatives provided by the Sixth Amendment, was exploring his range of options through the use of retained counsel to argue for his proposed hybrid arrangement. But the court was not willing to consider hypothetical questions. Singleton had already filed an affidavit swearing to his indigence in order to obtain Yamamoto's assistance as appointed counsel, and he provided no evidence that he had "hired" Yamamoto or anyone else.

Singleton argues now that the district court erred in refusing to consider his hybrid proposal under a retained counsel arrangement. We need not resolve whether Singleton's dialogue before the district court was merely argumentative because we believe the court acted well within its broad discretion in denying, absent a constitutional requirement, an arrangement under which retained counsel would play a supportive role to a pro se defendant during trial. A trial judge has broad supervisory power over his courtroom and may within that discretion insist that a trial before him, if orchestrated or guided by an attorney, be presented in accordance with the ethical, professional, and prudential rules of trial conduct. And in order to be so satisfied, the judge has discretion to insist that in the courtroom counsel, not the client, take over completely and act as the spokesperson of the defense's case. Thus, the district court, having properly recognized no constitutional right to have advisory counsel support Singleton in the courtroom during trial, had discretion, should Singleton have retained counsel, to insist that Singleton's case be presented in court either by his attorney or by himself, but not by a combination of the two.**10**

_____

**10** Even though we do not address whether a defendant who validly asserted his Faretta right could hire an attorney to serve as a legal expert consultant, in a nonparticipatory role, we do note that litigants with financial resources may hire any number of experts. Moreover, various state and federal statutes provide methods for indigent defendants to secure testimonial experts in a variety of fields. But the circumstances under which the Constitution requires provision of such experts remain

20

In summary, we are satisfied that in the case before us Singleton knowingly and intelligently waived his Sixth Amendment right to counsel and that, in light of Singleton's untimely assertion of his right to proceed pro se, the district court did not abuse its discretion in conditioning its acceptance of Singleton's request in a way designed to minimize disruption to the ongoing trial. In reaching these conclusions, we reject Singleton's contention that the Constitution requires that he be provided with a hybrid type of representation.

VI

Singleton also appeals the calculation of his prior criminal history under U.S.S.G. § 4A1.2 for sentencing purposes.

In calculating Singleton's criminal history, the district court found that Singleton's two prior state convictions for cocaine distribution were separate sentences and were not "related" as defined by U.S.S.G. § 4A1.2. In arguing that his prior convictions were related and, therefore, should be treated as one sentence for purposes of computing prior criminal history, Singleton introduced evidence to support a finding that his two prior convictions were part of a single common scheme or plan as provided in application note 3 for U.S.S.G. § 4A1.2. That note states that where prior offenses were not separated

_____

few. See Ake v. Oklahoma, 470 U.S. 68 (1985) (once defendant demonstrates that sanity is likely to be significant issue at trial, due process requires availability of psychiatrist to assist in preparation and presentation of his defense; however that right does not guarantee the psychiatrist of defendant's choice); Williams v. Martin, 618 F.2d 1021 (4th Cir. 1980) (where a substantial question regarding the cause of death required expert testimony to explain, state court's refusal to furnish pathologist to defendant charged with murder violated equal protection). Furthermore, those cases which have found a constitutional right to expert witnesses have involved cases in which the expert assistance was otherwise unavailable to the defendant. In the case of legal expertise, however, the Sixth Amendment right to representation by counsel makes legal expertise available to the defendant. And just as Ake did not guarantee the defendant the expert of his choice, the Sixth Amendment does not absolutely guarantee an indigent defendant his counsel of choice. See United States v. Gallop, 838 F.2d 105 (4th Cir. 1988).

by an intervening arrest, "prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) <u>were part of a single common scheme or plan</u>, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 application note 3 (emphasis added). Singleton does not dispute that his prior sentences occurred on different occasions and were not consolidated for trial. He argues, rather, that the district court appeared to assume that the convictions which met neither of these criteria could not constitute a common scheme or plan.

Our cases clearly establish that "common scheme or plan" is a separate basis for finding prior sentences to be related. <u>See, e.g.</u>, <u>United States v. Breckenridge</u>, 93 F.3d 132, 138 (4th Cir. 1996); <u>United States v. Fonville</u>, 5 F.3d 781, 784-85 (4th Cir. 1993); <u>United States v. Rivers</u>, 929 F.2d 136, 139-41 (4th Cir. 1991). Because the district court did not make a separate inquiry as to whether the prior cocaine offenses constituted a common scheme or plan, we remand this case to the district court to enable it to evaluate this factor under the standards we have established in our cases.

<u>CONVICTION AFFIRMED;</u>
<u>REMANDED FOR RESENTENCING</u>

22