**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 23-4011**

―――――――――

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JARRED JAVON FORD,

Defendant – Appellant.

―――――――――

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:21-cr-00105-BO-1)

―――――――――

Argued:  September 24, 2024                          Decided:  July 23, 2025

―――――――――

Before AGEE, RUSHING, AND BENJAMIN, Circuit Judges.

―――――――――

Affirmed by unpublished opinion.  Judge Rushing wrote the majority opinion, in which Judge Agee joined.  Judge Benjamin wrote an opinion concurring in part and concurring in the judgment.

―――――――――

**ARGUED:**  Amos Granger Tyndall, PARRY LAW, PLLC, Chapel Hill, North Carolina, for Appellant.  Lucy Partain Brown, OFFICE OF THE UNITED STATES ATTORNEY, for Appellee.  **ON BRIEF:**  Thomas K. Maher, AMOS TYNDALL PLLC, Carrboro, North Carolina, for Appellant.  Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

RUSHING, Circuit Judge:

Defendant Jarred Ford represented himself at trial, and the jury convicted him of possessing a firearm as a convicted felon. The Sentencing Guidelines recommended a sentence of 120 months, which the district court imposed. Now Ford appeals his conviction and sentence, arguing that the district court erred in allowing him to proceed pro se and that it procedurally erred in imposing his sentence. Because Ford knowingly waived his right to counsel and the district court's sentencing errors did not prejudice him, we affirm.

I.

Nash County Sheriff's Deputy Shelby Smith stopped Ford's vehicle on Interstate 95 for speeding and unsafe movement. After smelling marijuana, Deputy Smith ordered Ford to exit the vehicle and requested backup. Deputy William Toney arrived, and the deputies attempted to detain and frisk Ford, who resisted. Upon seeing that Ford had a handgun in his waistband, Deputy Smith alerted Deputy Toney. Ford then shot Deputy Toney in the arm and hip at close range and shot him a third time in the other arm as he fell to the ground. Ford continued firing at Deputy Smith until he ran out of ammunition.

A federal grand jury indicted Ford on one count of possessing a firearm as a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924.[1] Ford elected to represent himself, and the jury found him guilty after a one-day trial. The Probation Office prepared a Presentence Investigation Report (PSR) calculating Ford's total offense level as 42, which carries a Sentencing Guidelines range of 360 months to life. The statutory maximum for Ford's

---

[1] The State of North Carolina also charged Ford with two counts of attempted first-degree murder.

offense, however, was 120 months, so that was the Guidelines' recommended sentence. The district court sentenced Ford to 120 months in prison.

## II.

We first address Ford's contention that the district court erred in granting his request to represent himself.

At Ford's initial appearance, the magistrate judge advised Ford of his rights and appointed the Federal Public Defender's Office to represent him. The magistrate judge also advised Ford of the charge and potential penalties, and Ford confirmed that he understood both.

A few months later, Ford informed his appointed counsel that he wanted to represent himself, and counsel moved to withdraw. At a hearing on the motion, counsel explained Ford's request and advised the district court that Ford had also elected to represent himself on the related attempted murder charges in state court. The court reviewed Ford's Pretrial Services Report and then explained to Ford: "You have a right to counsel. You also have a right to be your own lawyer. I'd admonish you that you need legal skill to appear in a court." J.A. 53. The district court asked Ford where he lived, where he was born, his nationality, and why he wanted to represent himself. The Government provided a summary of the anticipated facts, and the court replied that the case "should be pretty easy to try." J.A. 55. The district court then granted counsel's motion to withdraw and allowed Ford to proceed pro se.

A criminal defendant may waive his Sixth Amendment right to counsel "if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and

4

(3) timely." *United States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013). On appeal, Ford argues only that the district court failed to ensure his waiver was knowing, intelligent, and voluntary.

Whether a defendant has made an intelligent waiver of the right to counsel depends "upon the particular facts and circumstances" of the individual case. *United States v. Singleton*, 107 F.3d 1091, 1097 (4th Cir. 1997) (internal quotation marks omitted); *see United States v. Roof*, 10 F.4th 314, 359 (4th Cir. 2021) ("The Supreme Court has not prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." (internal quotation marks omitted)). "The trial court must simply 'assure itself that the defendant knows the charges against him, the possible punishment, and the manner in which an attorney can be of assistance.'" *Herrington v. Dotson*, 99 F.4th 705, 717 (4th Cir. 2024) (quoting *Roof*, 10 F.4th at 359). That determination "is made by examining the record as a whole and evaluating the circumstances known to the trial court at the time." *Id.* (internal quotation marks and ellipses omitted).

The record demonstrates Ford was apprised of the charges against him, the potential punishments, and the benefit of having an attorney. At Ford's initial appearance, the magistrate judge advised him of the charges and the range of potential punishments, and Ford confirmed he understood both. *Cf. Singleton*, 107 F.3d at 1098 (finding defendant was "adequately informed" of the charges and potential penalty at his arraignment). The magistrate judge also informed Ford that he was entitled to an attorney at "every stage of the proceeding." J.A. 20. And at the hearing on defense counsel's motion to withdraw,

5

the district court "admonish[ed]" Ford that he "need[ed] legal skill to appear in a court." J.A. 53; *cf. Singleton*, 107 F.3d at 1098 (district court "advise[d] [defendant] that he should think 'long and hard' before firing counsel, noting that counsel would be of assistance to him").

The circumstances known to the district court confirm that Ford made his decision with eyes open. The Pretrial Services Report informed the court that Ford was 34 years old, was a U.S. citizen, and had experience with the judicial process due to multiple prior convictions.[2] *Cf. Singleton*, 107 F.3d at 1098 (assessing defendant's "appreciation of the judicial process"). Defense counsel advised the court that Ford also had elected to represent himself on related attempted murder charges in state court.[3] Ford also demonstrated some legal knowledge when he asked the district court, during the hearing, whether he still had time to file pretrial motions. *Cf. id.* ("Singleton's questions to the court in exploring his choice regarding counsel demonstrated an active intelligence."). And the district court had determined that the case, which charged Ford with one count of possessing a firearm as a felon, "should be pretty easy to try." J.A. 55; *cf. Singleton*, 107

---

[2] The record further reflects that Ford served in the Marine Corps and attended some college, although it does not appear that the district court knew this information at the hearing.

[3] At the Government's request, we take judicial notice of state court records showing that Ford represented himself at trial in state court, resulting in a hung jury. *See* Motion for Judicial Notice, ECF No. 60 (Sept. 17, 2024). After a retrial, a Nash County jury convicted Ford of two counts of attempted first degree murder. Ford represented himself with standby counsel. *See* Government 28(j) Letter, ECF No. 65 (Mar. 4, 2025).

F.3d at 1093 (defendant represented himself at trial on "20 counts for a series of armed robberies" committed on "four separate occasions").

To be sure, the district court did not conduct a "searching or formal inquiry," but that is no ground for reversal. *Singleton*, 107 F.3d at 1097. Although we would "prefer[] to have seen a more thorough colloquy," the "record as a whole"—including Ford's background, history, and in-court statements—shows that Ford made his decision to waive counsel knowingly, intelligently, and voluntarily. *Id.* at 1099. Finding no error, we affirm Ford's conviction.[4]

### III.

Next, Ford argues that the district court erred by discussing his sentence with the prosecutor in his absence. Two days before Ford's scheduled sentencing hearing, the Government filed an emergency motion for a continuance because Deputy Toney—who planned to attend the sentencing—was battling complications following surgery to remove one of Ford's bullets from his arm. The district court held a hearing on the motion the next day without Ford, who was still pro se. During the hearing—which lasted four minutes— the Government explained the situation and discussed possible dates to reschedule the sentencing. In pressing the Government on whether a continuance was really necessary,

---

[4] "[T]he standard of review is plain error when a represented defendant, whose counsel is advocating for their client's right to self representation, is allowed to proceed pro se." *United States v. Taylor*, No. 21-4601, 2024 WL 1045228, at *4 (4th Cir. Mar. 11, 2024); *see Bernard*, 708 F.3d at 588 n.7 (holding that counsel's "failure to preserve the claim of invalid waiver warrants plain error review"). The district court here did not err, much less plainly err, in concluding that Ford's waiver was knowing, intelligent, and voluntary.

the district court inquired about Ford's sentencing exposure, and the following exchange occurred:

> MR. SINGH:  . . . [S]o his guidelines go up to 360 to life.
>
> THE COURT:  But -- but the cap is ten years.
>
> MR. SINGH:  Correct. Correct. Correct. Yeah.
>
> THE COURT:  So he's just gonna get the ten years.
>
> MR. SINGH:  Yeah.
>
> THE COURT:  Okay.  You're telling me that his guideline, if there was no statutory cap, is 360 to life.
>
> MR. SINGH:  Correct.
>
> THE COURT:  But . . . he's got a ten-year cap.
>
> . . .
>
> THE COURT:  He's got a -- so what -- where's the mystery?  I mean --
>
> MR. SINGH:  There's no – there's no mystery.  I just -- I just want to -- I just want to see if there's any opportunity to ensure that the victim gets the chance to allocute, but that's it.

J.A. 165–166.  The court granted the motion and postponed the sentencing hearing.

On appeal, the Government agrees with Ford that the district court violated Federal Rule of Criminal Procedure 43 by discussing Ford's sentence in the ex parte hearing.  *See* Fed. R. Crim. P. 43(a)(3) ("Unless [a rule] provides otherwise, the defendant must be present at . . . sentencing.").  But the Government argues that Ford suffered no prejudice from this error because he subsequently received the only remedy he requests: "a new sentencing hearing."  Opening Br. 21.  We agree.

8

Following a Rule 43 violation, we typically vacate the sentence and remand for resentencing, absent harmless error. Accepting Ford's argument that the continuance hearing was "tantamount to opening the sentencing hearing" without him present in violation of Rule 43(a)(3), Opening Br. 20, the ordinary remedy would be resentencing in front of the same judge.[5] *See United States v. Rogers*, 961 F.3d 291, 300 (4th Cir. 2020) (remanding for resentencing based on Rule 43(a)(3) violation); *United States v. Lawrence*, 248 F.3d 300, 305–306 (4th Cir. 2001) (same).

Ford received that exact remedy, a "resentencing," when the district court conducted his rescheduled sentencing hearing one-and-a-half months later. Ford was present at the sentencing hearing and voiced his objections to the PSR. And although the court discussed Ford's potential sentence at the continuance hearing, we reject Ford's assertion that the court "reached and announced the sentence" in that hearing. Opening Br. 20; *cf. United States v. Covington*, 65 F.4th 726, 732 (4th Cir. 2023) ("[W]e will generally assume a judge's discussion of the appropriate term of imprisonment during the sentencing hearing is tentative, not a final imposition of the sentence."). At the rescheduled sentencing hearing, the district court considered and ruled on Ford's objections to the PSR before imposing its sentence. We see "no reasonable possibility" that the court's exchange with the Government at the continuance hearing "might have contributed to" the ultimate sentence the court imposed. *United States v. Pratt*, 351 F.3d 131, 138 (4th Cir. 2003)

---

[5] We have ordered resentencing with a new judge where "the appearance of fairness and impartiality is best advanced by reassignment," *United States v. McCall*, 934 F.3d 380, 384–385 (4th Cir. 2019) (internal quotation marks omitted), but Ford has not requested this relief.

(internal quotation marks omitted). Because Ford has already received the relief he seeks, we decline to disturb his sentence on this basis.[6]

## IV.

Lastly, Ford challenges the procedural reasonableness of his sentence. The PSR calculated Ford's base offense level as 33 based on a cross-reference to attempted murder. Upward adjustments for the degree of injury inflicted on a law enforcement victim resulted in a total offense level of 42, which carries a Guidelines range of 360 months to life regardless of criminal history. The statutory maximum for Ford's offense, however, was 120 months, so that became the Guidelines' recommended sentence. *See* U.S.S.G. § 5G1.1(a).

At his sentencing hearing, Ford objected to his criminal history category and to the attempted murder cross-reference. Regarding criminal history, the district court explained that it made no difference because his Guidelines sentence would be 120 months regardless. As for the cross-reference, the district court stated: "I'll make a finding that your exchange of gunfire at the sheriff's department and the law enforcement officers was an attempted murder as a matter of law, in fact." J.A. 172. After Deputy Toney spoke, the Government requested a 120-month sentence based on the seriousness of the offense conduct, Ford's criminal history, and Ford's use of the same firearm in a different shooting less than a month beforehand. The district court then announced the sentence:

---

[6] To the extent Ford casts his argument in constitutional terms, our conclusion is the same. Ford received the only remedy he seeks: a fresh sentencing hearing with all the constitutional protections, which beyond doubt was not affected by the exchange at the continuance hearing.

10

> All right. The total offense level is a category 42. As I said, that produces a guideline range of 360 months to life imprisonment. The statutory mandatory -- or the statutory maximum is 120 months, and so I'll impose a sentence of 120 months in the Bureau of Prisons or its authorized representative, a term of three years of supervised release on the conditions of supervision in force in this District, and a special assessment of a hundred dollars.

J.A. 179–180.

On appeal, Ford contends that the district court (1) incorrectly calculated his base offense level by applying the attempted murder cross-reference and (2) failed to discuss the sentencing factors of 18 U.S.C. § 3553(a) when imposing his sentence. We address each argument in turn.

A.

In convictions for unlawful firearm possession, the Sentencing Guidelines permit a district court to cross reference, or substitute, the base offense level for a different offense the defendant committed in connection with the unlawful firearm possession, if the resulting offense level is greater than would otherwise be determined.[7] U.S.S.G. § 2K2.1(c)(1)(A). A district court may cross reference a federal, state, or local offense, regardless of whether a charge was brought, or a conviction obtained. *Id.* § 2K2.1 cmt. n.14(C). The court need only find by a preponderance of the evidence that the defendant committed the additional offense. *See United States v. Slager*, 912 F.3d 224, 232 (4th Cir. 2019). In reviewing whether a district court properly applied a sentencing cross-reference,

---

[7] Ford's assertion that the district court should have cross referenced assault therefore fails, because the resulting base offense level would be *less* than would otherwise be determined for his offense.

11

"we review the district court's legal conclusions de novo and its factual findings for clear error." *Id.* (internal quotation marks omitted).

Ford contends the district court didn't make a finding about whether he committed attempted murder and that the facts don't support such a finding. Neither argument has merit. First, the district court made a factual finding on the record. After receiving Ford's objection to the attempted murder cross-reference in the PSR, the court ruled on it, saying: "I'll make a finding that your exchange of gunfire at the sheriff's department and the law enforcement officers was an attempted murder as a matter of law, in fact." J.A. 172. Second, the law and the facts support that conclusion. Murder is the unlawful killing of another with malice aforethought, which may be established by reckless and wanton conduct. *See* 18 U.S.C. § 1111(a); *United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003). Attempted murder requires a substantial step toward completion of the intended crime. *See United States v. Engle*, 676 F.3d 405, 419–420, 423 (4th Cir. 2012). At trial the district court heard evidence that Ford, without provocation, shot Deputy Toney three times at close range around the trunk of his body, causing severe injuries, and that Ford continued firing on Deputy Smith until he ran out of bullets. This evidence supports a finding, by a preponderance, that Ford attempted to kill the deputies.

B.

We turn last to Ford's complaint that the district court did not mention the Section 3553(a) sentencing factors or explain the reasons for his sentence. We agree that was error. But Ford has not identified any prejudicial effect on his sentence, so we must affirm.

12

To preserve an objection to the adequacy of the district court's sentencing procedure, a defendant must at a minimum seek "a sentence different than the one ultimately imposed." *United States v. Lynn*, 592 F.3d 572, 578 (4th Cir. 2010); *see* Fed. R. Crim. P. 51(b). Where a defendant fails to do so and instead raises his objection for the first time on appeal, we review only for plain error. *Lynn*, 592 F.3d at 579; *see* Fed. R. Crim. P. 52(b). To succeed under this rigorous standard, a defendant must show (1) an error, (2) that is clear or obvious, (3) that "affected the outcome of the district court proceedings," and (4) that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation marks and brackets omitted). In the sentencing context, the third prong requires showing that, "absent the error, a different sentence might have been imposed." *United States v. Hernandez*, 603 F.3d 267, 273 (4th Cir. 2010); *see Lynn*, 592 F.3d at 580 & n.5.

The first two prongs are satisfied: the district court's failure to explain the selected sentence was an obvious error. When rendering a sentence, the district court must "apply the relevant § 3553(a) factors to the specific circumstances of the case" and "'state in open court' the particular reasons supporting its chosen sentence." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (quoting 18 U.S.C. § 3553(c)). The district court here "failed to explain how the § 3553(a) factors support the sentence" or "provide any sentencing rationale at all." *United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019); *see also United States v. Myles*, 805 Fed. App. 184, 189–190 (4th Cir. 2020). That was plain error.

However, Ford "did not argue for a sentence different than the within-Guidelines sentence [he] ultimately received" and so failed to preserve his objection to the district

13

court's sentencing explanation. *Lynn*, 592 F.3d at 580. Although Ford lodged two objections to the PSR, the district court addressed them both, and neither would have reduced his Guidelines range below the 120-month statutory maximum. Importantly, Ford "did not ask the court to depart from the correctly calculated Guidelines range" based on considerations pertinent to the Section 3553(a) factors (or any ground at all). *Id.* He therefore must show that the district court's "lack of explanation 'had a prejudicial effect on the sentence imposed.'" *United States v. Powell*, 650 F.3d 388, 396 (4th Cir. 2011) (quoting *Lynn*, 592 F.3d at 580).

Ford has not made the required showing. He "received a within-Guidelines sentence that we presume on appeal was reasonable." *Id.* at 395 (finding that sentencing explanation error did not affect substantial rights); *see also Hernandez*, 603 F.3d at 273 (same); *Lynn*, 592 F.3d at 580 (same). In the district court and again on appeal, he identified no reasons for a sentence below 120 months. Moreover, the 120-month sentence Ford received was a dramatic reduction from the Guidelines range his conduct actually earned, which was 360 months to life. Ford has not shown, or even tried to show, that additional explanation by the district court in these circumstances might have resulted in an even lower sentence. *See Hernandez*, 603 F.3d at 273; *cf. United States v. Boulware*, 604 F.3d 832, 840 (4th Cir. 2010) (finding a preserved sentencing explanation error harmless in part because "the notion that having to explain its analysis further might have changed the district court's mind" was "simply unrealistic" and a remand for resentencing would have been "a pointless waste of resources"). Accordingly, we cannot conclude that the district court's inadequate explanation had a prejudicial effect on the ultimate sentence imposed.

14

\*    \*    \*

For the foregoing reasons, Ford's conviction and sentence are

*AFFIRMED.*

DEANDREA GIST BENJAMIN, Circuit Judge, concurring in part and in the judgment:

I agree that the district court's Rule 43 violation was harmless error[1] and that its sentencing error did not "affect[] the outcome of the district court proceedings." Maj. Op. at 8–9, 12–13. But I do not agree that its Rule 11 colloquy was error-free. *Id.* at 6–7.

It is true that both here and in *United States v. Singleton*, 107 F.3d 1091 (4th Cir. 1997), the court gave a single sentence admonition about the legal skill required to appear in court. *See* 107 F.3d at 1098; Maj. Op. at 5–6; J.A. 53. In *Singleton*, the judge warned the defendant to think "long and hard" before waiving counsel. 107 F.3d at 1094. The defendant did not think long: he spoke briefly with counsel before quickly announcing he still wished to fire his attorney. *Id.* But that exchange was not the whole story. The court in *Singleton* had engaged the defendant in an extended colloquy regarding the difficulties of proceeding pro se. The trial judge had responded to the defendant's extensive questions about participation in cross-examination and closing arguments, whether he himself would be able to object, and whether counsel might "advise [him] on technicalities." *See id.* & n.5.

---

[1] Though I agree that there is " 'no reasonable possibility' that the court's exchange with the Government at the continuance hearing 'might have contributed to' the ultimate sentence the court imposed," Maj. Op. at 9 (quoting *United States v. Pratt*, 351 F.3d 131, 138 (4th Cir. 2003)), I disagree with the majority's characterization of the January 4 hearing as a "resentencing." Resentencing is a remedy—a "means of . . . redressing a wrong." *Remedy*, Black's Law Dictionary (12th ed. 2024). The majority's framing of the January 4 sentencing as a "resentencing" implies that the district court recognized that its ex parte conversation with the Government was error and, through the January 4 hearing, sought to redress that error. That is not what happened here. On January 4, the district court simply conducted its sentencing hearing as expected.

16

These questions "proposing subtly differing options to use counsel during his own defense, le[ft] no doubt that he understood that a trained attorney's specialized knowledge would be valuable to his defense." *Id.* at 1098. And before allowing the defendant to make a "final decision" on discharging his counsel, the court listed the ways counsel might assist him, including calling and questioning witnesses, and warned the defendant that if he waived his right to counsel, he would "be held to the same rules [of evidence and procedure] as [counsel] would be held" without the benefit of counsel's advice. *Id.* at 1094, 1098.

Here, the district court stated, as relevant and in full, "I'd admonish you that you need legal skill to appear in court." J.A. 53. But the court did not supplement its initial warning before allowing Ford to proceed pro se. J.A. 53–55. As the majority notes, Ford asked the court whether he still had time to file pretrial motions. Maj. Op. at 6. But the majority neglects to mention that Ford asked his question about pretrial motions *after* the court had allowed him to waive representation by counsel. *See* J.A. 56–57. Unlike Singleton's nuanced questions of his counsel's role, Ford asked *no* questions which indicated he understood the specific role or advantages of representation by counsel at trial.

Ford's sole question about pretrial motions cannot demonstrate that he "understood that a trained attorney's specialized knowledge would be valuable to his defense" before waiving his right to counsel. *See Singleton*, 107 F.3d at 1098. And a single question about pretrial motions *after* his attorney had been released could not have "explor[ed] his choice regarding counsel [thereby] demonstrat[ing] an active intelligence"—a choice that Ford had already been allowed to make. *See id.*; J.A. 55–56. The fact that "Ford also had elected

17

to represent himself on related attempted murder charges in state court" does not alter the analysis. *Maj. Op.* at 6. Allowing waivers in external proceedings to remedy the deficiencies of his waiver in this case would allow trial judges to abdicate "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver." *See Johnson v. Zerbst*, 304 U.S. 458, 465 (1938).

A comparison to *Singleton* therefore compels the conclusion that Ford's waiver was not knowingly and intelligently made. But in view of the flexible standard, *United States v. Roof*, 10 F.4th 314, 359 (4th Cir. 2021) (quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004)) ("The Supreme Court has not 'prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel.' "), and the similarities between this case and *Singleton*, the district court's error was not "clear" or "obvious." *See United States v. Olano*, 507 U.S. 725, 734 (1993). So Ford cannot establish that the district court's error was plain, and his challenge cannot succeed. *See id.*

Because the district court's errors do not move the needle on the outcome of this case,[2] I agree that affirmance is proper.

---

[2] This is equally true of Ford's sentencing challenge. As the majority observes, "Ford has not shown, or even tried to show" that he would have received less than his 120-month sentence, which was already "a dramatic reduction from the Guidelines range his conduct actually earned." *Maj. Op.* at 14.