# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Lamont Antonio Samuel, Petitioner.

Appellate Case No. 2015-002401

—————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

—————

Appeal From Orangeburg County
The Honorable Diane Schafer Goodstein, Circuit Court
Judge

—————

Opinion No. 27768
Heard March 1, 2017 – Filed February 28, 2018

—————

## REVERSED AND REMANDED

—————

Appellate Defender Robert M. Pachak, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General J. Robert Bolchoz, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General W. Edgar Salter, III, all of Columbia, and Solicitor David Michael Pascoe, Jr., of Orangeburg, for Respondent.

**JUSTICE HEARN:**  In this case we clarify the proper scope of a circuit judge's inquiry under *Faretta*[1] when a criminal defendant knowingly, intelligently, and voluntarily waives his right to counsel and requests to proceed *pro se*.  Prior to his trial for murder, Lamont Antonio Samuel moved to represent himself under *Faretta*. The circuit judge denied his motion, finding Samuel was lying about whether he had or would have access to legal coaching in preparation for trial.  The court of appeals affirmed.  *State v. Samuel*, 414 S.C. 206, 777 S.E.2d 398 (Ct. App. 2015).  We now reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Samuel was indicted for the murder of his cousin, Taneris Hamilton.  On the day his case was called to trial, Samuel indicated he was dissatisfied with defense counsel and made a *Faretta* motion to waive his right to counsel and proceed *pro se*. The circuit judge then properly initiated an *ex parte* hearing to discuss Samuel's *Faretta* motion with him.

Samuel informed the court that he was twenty-one years old and had graduated from high school with a 4.0 GPA in all honors classes with hopes of enlisting in the Navy as a diesel mechanic.  Additionally, Samuel affirmed he understood he was charged with murder and was aware of the elements of the crime. He realized he could be sentenced to at least thirty years in prison, with a maximum possible sentence of life imprisonment without the possibility of parole.  Samuel also indicated he had never been treated for drug or alcohol abuse, mental, or emotional health issues, nor had he taken any medication, drugs, or alcohol in the previous seventy-two hours.  The judge noted she found Samuel to be "incredibly articulate" and "exceptionally bright;" nevertheless, she repeatedly told Samuel she had misgivings about his self-representation.  Samuel thanked the judge for her advice, but reiterated his request to proceed *pro se*.

The circuit judge then inquired as to whether Samuel had any legal training. He responded that he had been studying trial procedures in the Criminal Law Handbook, which he had received in the mail while in prison.  Samuel testified that his mother had sent him the book upon the advice of attorney Carl Grant.  The circuit judge further questioned whether Samuel was familiar with the rules of evidence, motions *in limine*, and motions for directed verdict.  Samuel affirmed that he was, based upon his study of the Criminal Law Handbook and coaching he had received from Grant.  He also acknowledged he would be required to follow the rules of

---

[1] 422 U.S. 806 (1975).

evidence if he were to represent himself, and that he had the right not to testify under the Fifth Amendment.  Finally, the circuit judge asked Samuel if he was aware of any possible defenses he might have to the charge against him and, following some prompting questions by the judge, he acknowledged his intent to maintain his innocence based upon his co-defendant's alleged confession.

Rather than concluding the *Faretta* colloquy, the circuit judge continued to caution Samuel against representing himself, stating in her opinion Samuel would be far better defended by a trained lawyer, it would be unwise of him to waive his right to counsel, and she did not believe he was sufficiently familiar with the law, procedure, or rules of evidence to adequately represent himself.  Despite the judge's warnings and in light of the potential penalties he faced, Samuel voluntarily reaffirmed his desire to dispense with the assistance of counsel and proceed *pro se*.

Nevertheless, the circuit judge continued her attempts to dissuade Samuel, asking "Do you know anything or anyone that I can have you speak with that might urge you to have a lawyer represent you?"  Samuel responded,

> No, ma'am. . . . I mean, my mama, basically paid Mr. Grant a good bit amount [sic] of money.  The reason why he couldn't represent me is because . . . his paralegal is related, you know, in some manner.  So he had decided to just go over the steps with me day by day.  I go through the trial, I got back to him.  I talk to him, he'll tell me things or he won't -- he's not going to be in the courtroom, present. . . . I know he's not representing me, but he is coaching me on --.

The circuit judge then stated, "You're bright enough, educated enough. . . . You don't have a problem that I'm aware of that I can use, in all candor, to keep you from representing yourself."  However, instead of ruling on Samuel's motion at that point, the circuit judge summoned Grant to question him on his relationship with Samuel.  Nonetheless, prior to Grant's arrival, the judge stated on the record that her inclination was to allow Samuel to represent himself.

Upon his arrival, Grant testified as follows:

> I have no recollection of ever sharing with Ms. Betty Hickson, [Samuel's] mother, anything pertaining to any rules of evidence or rules in criminal procedure or anything like that. . . .  The only discussion has been about the legal fees to represent this young man. . . .  Also, I've not been retained. . . .  I've not offered any assistance to anyone, Judge.  I've not even given this young man any kind of copy of the rules of evidence or rules of criminal procedure or offered my assistance in any

way. . . . [A]s far as my offering any assistance to him, Judge, number one, if he's representing himself I would not be available to provide any assistance to him in any capacity.

After hearing Grant's testimony, the circuit judge denied Samuel's request to proceed *pro se* citing Rule 3.3 of the Rules of Professional Conduct[2] and *Gardner v. State*, 351 S.C. 407, 412–13, 570 S.E.2d 184, 186–87 (2002) (including whether a defendant is attempting to delay or manipulate the proceedings as *one of ten* factors courts can consider when determining if a defendant "has a sufficient background to understand the dangers of self-representation"). Specifically, the circuit judge interpreted Samuel's and Grant's conflicting testimony to mean Samuel was lying to her and attempting to manipulate the proceedings.

Thereafter, Samuel proceeded to trial with his counsel and was found guilty and sentenced to fifty years imprisonment. He appealed his conviction, asserting the circuit judge erred in denying his right to self-representation, and the court of appeals affirmed. *Samuel*, 414 S.C. at 213, 777 S.E.2d at 402. This Court granted Samuel a writ of certiorari to review the court of appeals' opinion.

## STANDARD OF REVIEW

Whether a defendant has knowingly, intelligently, and voluntarily waived his right to counsel is a mixed question of law and fact which appellate courts review de novo. *United States v. Lopez-Osuna*, 242 F.3d 1191, 1198 (9th Cir. 2000). Specifically, we review a circuit judge's findings of historical fact for clear error; however, we review the denial of the right of self-representation based upon those findings of fact de novo. *United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005). In doing so, this Court must consider the defendant's testimony, history, and the circumstances of his decision, as presented to the circuit judge at the time the

---

[2] Rule 3.3, Candor toward the Tribunal, reads in pertinent part:

(a) A *lawyer* shall not knowingly:
   (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
. . .
(d) In an *ex parte* proceeding, a *lawyer* shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.

Rule 3.3, RPC, Rule 407, SCACR (emphasis added).

defendant made his request. *United States v. Singleton*, 107 F.3d 1091, 1097 (4th Cir. 1997).

## LAW/ANALYSIS

Through counsel, Samuel now argues the court of appeals erred in affirming the circuit judge's denial of his *Faretta* motion to proceed *pro se*. In particular, Samuel contends the circuit judge impermissibly exceeded the scope of the *Faretta* inquiry by considering Grant's testimony to conclude that Samuel was attempting to manipulate the proceedings, thereby precluding him from proceeding *pro se*. We agree.

In *Faretta*, the United States Supreme Court held that criminal defendants have a fundamental right to self-representation under the Sixth Amendment. 422 U.S. at 819–21. In order to effectively invoke this right of self-representation, the defendant must clearly and unequivocally assert his desire to proceed *pro se* and such request must be made knowingly, intelligently and voluntarily. *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000). Where a defendant invokes his right of self-representation before trial, the only inquiry the circuit judge may undertake is that required by *Faretta*. *State v. Barnes*, 407 S.C. 27, 35, 753 S.E.2d 545, 550 (2014). Thus, the only basis upon which a circuit judge may deny a defendant's pre-trial motion to proceed *pro se* is if the court determines the defendant has not knowingly, intelligently, and voluntarily waived his right to counsel. *State v. Reed*, 332 S.C. 35, 41, 503 S.E.2d 747, 750 (1998). A circuit judge's denial of a defendant's knowing and voluntary request to proceed *pro se* is a structural error requiring automatic reversal and a new trial. *State v. Rivera*, 402 S.C. 225, 247, 741 S.E.2d 694, 705 (2013).

Whether a defendant has intelligently waived his right to counsel depends upon the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused. *Singleton*, 107 F.3d at 1097. Moreover, as the United States Supreme Court has emphasized, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Godinez*, 509 U.S. at 399 (emphasis in original). In other words, whether a defendant is capable of effectively representing himself has no bearing upon his ability to elect self-representation. *Id.* at 400; *see also Faretta*, 422 U.S. at 836 (holding a defendant's "technical legal knowledge . . . [is] not relevant to an assessment of his knowing exercise of the right to defend himself"). Thus, this Court has held that

[t]he ultimate test of whether a defendant has made a knowing and intelligent waiver of the right to counsel is not the trial judge's advice, but the defendant's understanding. A determination by the trial judge that the accused lacks the expertise or technical legal knowledge to proceed *pro se* does not justify a denial of the right to self-representation; the *only* relevant inquiry is whether the accused made a knowing and intelligent waiver of the right to counsel.

*State v. Brewer*, 328 S.C. 117, 119, 492 S.E.2d 97, 98 (1997) (internal citations omitted) (emphasis added).

Although a defendant's decision to proceed *pro se* may ultimately be to his detriment, such requests "must be honored out of that respect for the individual which is the lifeblood of the law." *Barnes*, 407 S.C. at 35–36, 753 S.E.2d at 550 (internal quotation omitted); *see also Frazier-El*, 204 F.3d at 558 (noting a defendant's right of self-representation generally must be honored, regardless of whether he would benefit from advice of counsel). Indeed, "[a] decision can be made intelligently, with an understanding of the consequences, without the decision itself being a wise one." *Reed*, 332 S.C. at 41, 503 S.E.2d at 750.

We agree with Samuel that the circuit judge erred in refusing to allow him to represent himself at trial. In this case, the circuit judge repeatedly noted how intelligent and articulate she found Samuel to be. Samuel also clearly expressed his understanding of the nature of the charge against him and the potential penalties he faced were he to be found guilty. He indicated he was making the request of his own volition and continuously asked to represent himself despite the circuit judge's persistent attempts to dissuade him. *See Reed*, 332 S.C. at 41, 503 S.E.2d at 750 (holding although it is the circuit judge's responsibility to inform the defendant of the dangers and disadvantages of self-representation, whether the judge believes the decision is prudent or wise is entirely irrelevant).

We acknowledge it was within the circuit judge's authority to summon Grant; however, her questioning of Grant should have been limited to discerning whether Samuel's request was knowingly and voluntarily made. Moreover, our standard of review requires us to consider de novo the circuit judge's application of Grant's testimony to Samuel's *Faretta* request. *Bush*, 404 F.3d at 270. We are unaware of any cases in which a circuit judge has relied on testimony from a third party witness, such as Grant, to determine whether a defendant has effectively invoked the right to proceed *pro se*. Moreover, whether Grant would be available to advise or coach

Samuel throughout the trial[3] relates to his competence to represent himself which, as discussed *supra*, is entirely irrelevant to the issue of whether he effectively invoked his right of self-representation. *Godinez*, 509 U.S. at 399. Rather, it is clear the circuit judge, with the best of intentions, was so concerned with Samuel proceeding *pro se* that she went beyond the scope of the question at hand using Grant's testimony as the basis to prevent Samuel from invoking his constitutional right. We fully recognize the delicate balance a circuit judge must try to achieve in safeguarding a defendant's constitutional right to represent himself and the almost sure disaster that will result from his self-representation. Nevertheless, because we find Grant's testimony irrelevant to the issue, the circuit judge erred in relying on it to deny Samuel's request to represent himself.[4]

Moreover, we find the circuit judge's reliance on Rule 3.3 RPC and *Gardner* is misplaced. Not only has this Court never held that a criminal defendant acting *pro se* must comply with the rules of professional conduct, but we are unaware of any jurisdiction which has explicitly required criminal defendants to comply with ethical rules governing lawyers. Indeed, this Court has suggested, albeit in *dicta*, that the

---

[3] We note both Samuel and Grant explicitly stated that Grant had not been hired as Samuel's attorney nor would he be representing Samuel at trial. Indeed, the only discrepancy between their recitations of the situation was regarding Grant's willingness and availability to provide advice and guidance to Samuel prior to and throughout the trial.

[4] Contrary to the dissent's charge, we do not strip trial judges of their authority and discretion to maintain the integrity of the proceedings before them. Rather, we simply view the initial *Faretta* request through a different lens than the dissent. As this Court has previously stated, at the time a defendant invokes his constitutional right to proceed *pro se* the only relevant inquiry is that outlined in *Faretta*—whether the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. *Brewer*, 328 S.C. at 119, 492 S.E.2d at 98. The sufficiency of such a request is a question of law for this Court to review de novo. *Bush*, 404 F.3d at 270. However, once a defendant has been permitted to represent himself, the trial court has broad discretion to revoke that right for any of the reasons for which the dissent expresses concern. *West*, 877 F.2d at 285–86. Our holding does not require trial courts to suffer "mischief" or disruptive behavior in the courtroom with no recourse, but recognizes a defendant's constitutional right to self-representation may be lost when, in the trial court's discretion, he is disrupting or manipulating the trial of a case. Respectfully, however, that inquiry is separate from the issue we resolve today which focuses on the trial court's initial decision to permit a defendant to waive his right to counsel and proceed *pro se*.

opposite may be true. *See State v. Barnes*, 413 S.C. 1, 3 n.1, 774 S.E.2d 454, 455 n.1 (2015) ("Even if we believe that a criminal defendant's exercise of his constitutional rights stem from impure motives, that motivation alone is not a basis to deny him these rights. Further, while it is unethical for an *attorney* to engage in conduct which tends to pollute the administration of justice (Rule 7(a)(5), Rule 413 SCACR), we are unaware that this principle applies to a criminal defendant." (emphasis added)).[5]

Finally, although *Gardner* permits a circuit judge to consider a defendant's attempted manipulation of the proceedings, we discern no attempt by Samuel to disrupt or manipulate the process here. In most cases where a court has found a defendant to be manipulative, the defendant was clearly attempting to dispense with counsel in order to make impermissible arguments or raise invalid defenses at trial— in effect, to "beat the system"—rather than to waive the benefits of counsel. *See, e.g.*, *Frazier-El*, 204 F.3d at 560 (court found defendant's conduct manipulative where defendant repeatedly requested to replace his appointed counsel with another public defender, because his attorney would not present certain impermissible arguments, and it was clear his request to appear *pro se* was merely "a manipulative effort . . . to assert the defenses himself"). The only instance of manipulation the circuit judge cited was the disparate testimony from Samuel and Grant regarding their relationship. However, even if Samuel's testimony was misleading, this Court indicated in *Barnes* that a defendant's improper motive or unethical conduct is not enough to preclude him from exercising his right to self-representation. *See Barnes*, 413 S.C. at 3 n.1, 774 S.E.2d at 455 n.1. Therefore, we find Samuel made a knowing, intelligent, and voluntary request to proceed *pro se* as required by *Faretta*, and he

---

[5] The Respondent suggests that our statement in *Barnes* may conflict with *United States v. West*, 877 F.2d 281 (4th Cir. 1989). We disagree. In *West*, the district court revoked the defendant's right of self-representation after the judge gave specific cautionary instructions immediately prior to the defendant's opening statement, which he promptly disregarded. *Id.* at 285–86. The Fourth Circuit Court of Appeals affirmed stating, "By asserting his right of self-representation, [the defendant] assumed the responsibility of acting in a manner befitting an officer of the court." 877 F.2d at 287. However, nothing in the *West* opinion suggests that criminal defendants should be bound by any specific rules applicable only to attorneys such that *Barnes* would conflict with its holding. Rather, in *West* the defendant blatantly disregarded the circuit judge's instructions, and it was due to his disregard for those rules that his right of self-representation was revoked. Therefore, we see no conflict between our position in *Barnes* and the Fourth Circuit's holding in *West*.

should have been given the opportunity to represent himself.

## CONCLUSION

For the foregoing reasons, we hold the circuit judge erred in denying Samuel's invocation of his right to self-representation under *Faretta*.  Accordingly, we reverse the court of appeals' opinion and remand to the circuit judge for a new trial.

**BEATTY, C.J. and Acting Justice J. Cordell Maddox, Jr., concur. KITTREDGE, J., concurring in a separate opinion in which JAMES, J., concurs.**

**JUSTICE KITTREDGE:**  I respectfully dissent.  The majority holds that "the only basis upon which a circuit judge may deny a defendant's pre-trial motion to proceed *pro se* is if the court determines the defendant has not knowingly, intelligently, and voluntarily waived his right to counsel."  I certainly do not disagree in the abstract that an assertion of this right must be knowing, intelligent, and voluntary, and in the vast majority of cases, the majority's categorical approach will result in the proper outcome.  But I construe the *Faretta*[6] framework more broadly to allow for a trial court's exercise of discretion where, as here, the knowingly, intelligently, and voluntarily asserted right of self-representation is accompanied by a circumstance that undermines the integrity of the proceedings and the orderly administration of justice.  As a result, I would reject the majority's categorical rule that effectively precludes consideration of the trial court's exercise of discretion and places trial judges at the mercy of those who seek to exploit the right to self-representation for manipulative or disruptive ends.

In my judgment, this case illustrates the perplexing difficulties trial courts encounter when a defendant desires to proceed *pro se* and provides satisfactory, formulaic responses to the *Faretta* inquiry, yet the trial court perceives there is more at play.  One of those difficulties occurs when a defendant's request to proceed *pro se* is motivated by a desire to manipulate the proceedings.  According to the experienced trial judge, that is precisely what Petitioner was attempting to do.  Review of such a fact-based determination necessarily involves consideration of the trial court's exercise of discretion and recognition that the trial judge was in a position to hear the accused and observe his demeanor.  Because I am convinced there is evidence to support the trial court's finding, I would affirm.

More broadly, my concern is that the Court's categorical rule—that an absolute right to procced *pro se* automatically follows formulaic responses to *Faretta* inquiry—will invite mischief in the trial courts of this state while tying the hands of our trial court judges.  Granted, in the vast majority of cases, requests to proceed *pro se* will be regularly and properly granted, but trial court discretion must always be present to address the particular circumstances of the case, such as where this right is asserted to serve manipulative, disruptive, or dilatory ends.  Trial court discretion ensures the integrity of our justice system.

## I.

---

[6]  *Faretta v. California*, 422 U.S. 806 (1975).

The record in this case reveals that in addition to being charged with murder, Petitioner was also charged with obstruction of justice for repeatedly giving false statements to police in which he identified an uninvolved person as the shooter; for snatching one of his written statements from an investigator's hand and ripping it up; and for lying to police when he claimed to have thrown a gun involved in the murder[7] into a nearby pond—a lie that caused three separate law enforcement agencies, including a dive team from Lexington County, to expend time and resources over several days searching the pond for a nonexistent gun.[8]

In asserting his right of self-representation, Petitioner expressed frustration with his appointed counsel because counsel refused to let Petitioner speak directly with the solicitor to provide what Petitioner believed to be exculpatory evidence—namely, letters from a codefendant which Petitioner believed constituted a written confession exonerating him. Petitioner explained that counsel's request to review the letters for incriminating statements before deciding whether they should be shared with the State was asinine because "Why would I give you something that incriminates me[?]" Petitioner further explained his belief that counsel's efforts to negotiate a guilty plea to a lesser included offense demonstrated counsel did not believe Petitioner was innocent and this caused Petitioner to question counsel's loyalty in defending him.

During a detailed *Faretta* inquiry, the trial court asked Petitioner whether he had ever studied the law. Petitioner responded that he had studied a criminal law handbook which he claimed was provided to his mother by a local attorney, Carl Grant. Shortly thereafter, Petitioner mentioned Mr. Grant again, explaining:

> [Petitioner]: I mean, my mama, basically paid Mr. Grant a good bit of money. The reason why [Mr. Grant] couldn't represent me is because my family—I guess his paralegal is related, you know, in some manner. So he had decided to just go over the steps with me day by day. I go through the trial, I got back to him. I talk to

---

[7] Despite the majority's suggestion that Petitioner's co-defendant was the only "actual shooter," the record reveals that the victim was shot with three separate guns and that witnesses identified Petitioner and two other men as being responsible for the shooting.

[8] The obstruction of justice charge was nolle prossed following Petitioner's murder conviction.

him, he'll tell me things or he won't—he's not going to be in the courtroom, present.

The Court: Okay. And you know he's not representing you?

[Petitioner]: I know he's not representing me, but he is coaching me on—

The Court: I got you, but he's not representing you?

[Petitioner]: Oh, no, ma'am.

Following several further questions, the trial court appeared poised to grant Petitioner's motion. Then, Petitioner interrupted the trial court to make yet another reference to Mr. Grant:

The Court: Okay. Well, here's what I am going to do. You're bright enough, educated enough. You're not—you don't have a drug problem, you don't have an alcohol problem. You don't have a mental health problem. You don't have a problem that I'm aware of that I can use, in all candor, to keep you from representing yourself.

[Petitioner]: Ms. Goodstein—

The Court: You're bright enough.

[Petitioner]: I'd like to say something.

The Court: You understand your charges?

[Petitioner]: Yes, ma'am. I can say something to you?

The Court: Yeah.

[Petitioner]: I know, basically, you—what you're saying is that you're putting your neck on the line by you wouldn't want me to disappoint you. That's what's bringing me into this. My mama paying Carl Grant to come in and educate me, at the same time,

just because he a lawyer, I mean, I went to school, I'm smart. I can catch onto the common sense—I won't put you down when we're going to trial . . . .

The Court: Here's what I'm going to do. I'm going to ask Mr. Grant to come over here.

[Petitioner]: Yes, ma'am.

The Court: Just because I want to—I just want to have a little bit of dialogue with him with you, also. . . . I want to understand a little bit about that relationship, okay.

[Petitioner]: Yes, ma'am.

The Court: So I'm going to go see if I can find him and have him come on over here and let's have a little bit of a dialogue, okay. . . . I'm inclined to allow you to represent yourself although there have been some communications between you and Carl Grant, and I have to understand what they are a little more fully, okay?

[Petitioner]: Yes, ma'am.

Neither defense counsel nor Petitioner contemporaneously objected to this procedure. After Mr. Grant arrived, the trial court explained, "I need for our record to reflect [] the relationship, the extent of it, and going forward for trial, what, if any, contact at all [Petitioner] can anticipate *because I think he needs to know that*—if you'll share with us." (emphasis added). In other words, the trial court's express purpose for asking Mr. Grant to appear and answer questions on the record was to establish that Petitioner's choice about whether to represent himself was "made with eyes open," *Faretta*, 422 U.S. at 835, specifically with regard to what coaching or assistance, if any, Petitioner could expect Mr. Grant to provide him throughout the trial.

Mr. Grant informed the trial court that he had not been retained by Petitioner or Petitioner's mother and that he had not provided Petitioner any assistance whatsoever. Mr. Grant had quoted a retainer to fee to Petitioner's mother but never heard from Petitioner's mother again. Mr. Grant also stated that he would not provide any form of assistance to Petitioner during the trial. In short, Mr. Grant's

testimony refuted Petitioner's statements to the trial court.

Thereafter, the trial court confirmed that Petitioner understood that Mr. Grant would not be providing him any form of assistance during trial:

> The Court:  [Petitioner], do you have any questions of Mr. Grant that you want to ask him?
>
> [Petitioner]:  No, ma'am.  But I will tell Mr. Grant . . . thank you for your information you provided me.  I thank you for your advice and everything and I appreciate you addressing that to Ms. Goodstein.
>
> . . .
>
> The Court:  And do you know what—tell me what advice and information you are speaking of specifically?
>
> [Petitioner]:  Everything he said.
>
> The Court:  You're talking about today?
>
> [Petitioner]:  I'm just saying in general.  Everything he said makes a whole lot of sense.
>
> The Court:  Okay . . . .  Do you understand though that his—do you understand what the extent of his relationship has been?
>
> [Petitioner]:  Yes, ma'am.
>
> The Court:  Okay.  And that going forward that you cannot count on him being there?
>
> [Petitioner]:  Yes, ma'am.
>
> The Court:  Very well.
>
> . . .

Mr. Grant:  May I be dismissed, Your Honor[?]

The Court:  Indeed, sir.

Mr. Grant:  Thank you, Judge.

The Court:  Thank you, kindly.

Mr. Grant:  All right.  See y'all.

The Court:  All right.

[Petitioner]:  Ms. Goodstein?

The Court: Yes? Yes, sir?

[Petitioner]:  All right.  What I was trying to say before Mr. Grant came . . . before Mr. Grant came, when he was talking to me and talking to my mother, the reason why he indicated he said what he said was because one of his paralegals is kin to me or something. That's why he could never take the case.  But I'm sorry for having to go through that, but he already told my mother ahead of time that he had been through that in the previous past.  So his reasons for not coming out and indicating the same is because his reputation was on the line . . . .  [H]e already had told me and stated if it came down to him coming in front of a judge in front of the attorneys he was going to state that.  I know if it was somebody I was trying to do—handling some business for and be nice to them I would understand then because if my family member was kin to somebody else, I would do the same.

Following a short recess, the trial court made its ruling:

The Court:  I am ready to rule and I want to put on the record why I am making the determination that I am making in this case.  Now, first of all, here's what occurred this morning.  . . . You went through [a] colloquy.  You told me your educational background, which I think is very strong.  I think you're very bright, I think you're very articulate, extremely articulate.  Then we began to talk

about the rules and your knowledge of the rules, and I think it was at that point you informed me that your mother had provided you with the rule book and that the title had been given to her by Carl Grant. And that you had been studying—

[Petitioner]: Yes, ma'am.

The Court: —the rules then you went on to tell me that Carl Grant had been coaching you, had been coaching you with regards to the process and that—that you believe that he would, likewise, be coaching you with regards to the process of a trial, throughout the trial.

[Petitioner]: Yes, ma'am.

The Court: I then, out of concern that whether Carl Grant had undertaken representation of you and whether or not he would be acting as stand-by counsel in some form or fashion if you were to be []representing yourself. That is why I had him come in here.

[Petitioner]: Yes, ma'am.

The Court: He has testified. What he has said is he did not provide the title and that he has not coached you, that he has not had any conversations with you with regards to the processes and that he has not led you to believe that he would, likewise be doing so throughout the trial. Now,—

[Petitioner]: Ms. Goodstein, can I say something?

The Court: No, sir. I'm ruling. It's my turn to speak.

[Petitioner]: Okay.

The Court: Now, I have listened to you, I have listened to Carl Grant. I want you to understand I do not believe what you tell me about your relationship with Mr. Grant in terms of his having coached you and his willingness to coach you during the course of the trial. I simply do not believe that. I have to make a determination[,] and

I do not believe what you are telling me is accurate. That brings me to one of our rules . . . . One of the elements that the Court has to consider is whether or not the defendant is attempting to delay or manipulate the proceedings. I do not believe that you are trying to delay the proceedings. *I am concerned that the proceedings are being manipulated.*

. . . [Y]ou're not allowed to attempt to manipulate the court in your attempts in representation and . . . I believe that there is authority for me to disallow your self-representation . . . . Unfortunately, it has been demonstrated to [m]e between this morning and this afternoon that you lack candor with the court. On that basis and the basis of the case law that I have already mentioned[,] I cannot allow you to self-represent. I must have counsel to represent you.

[Petitioner]: Ms. Goodstein?

The Court: Yes.

[Petitioner]: I ain't never said I want [counsel] to leave. I mean, they can be aside and stay by my side. I respect that, but when Carl Grant came in here and told you before this situation occurred that about his name being mentioned by his paralegals, he don't want his reputation ruined. That's why Mr. Grant came and did—

The Court: I understand that. I don't believe you, because that's not what lawyers do. He simply would have a conflict and not be able to represent you. I don't believe you that he would be representing you and saying if it gets out[,] it will ruin my reputation. I find that very difficult to believe.

[Petitioner]: Due to the fact that Denise Hamilton is one of his paralegals—

The Court: I hear what you are saying.

[Petitioner]: —she's kin to me.

The Court: I hear what you are saying and I have ruled. There's

another rule that says you don't argue with the court once it has ruled.

(emphasis added).

During both direct and cross-examination at trial, Petitioner was argumentative and nonresponsive, and he was admonished by the trial court numerous times. Ultimately, the jury returned a guilty verdict, and Petitioner was sentenced to prison.

## II.
## A.

I begin my discussion by acknowledging the obvious—an accused has the right to procced *pro se*. But no right is absolute.[9] Trial courts must have the authority to control the proceedings and to ensure orderly administration of justice. Courts are citadels of justice, and it is the trial judge who is charged with ensuring the integrity of the proceeding and protecting against the proceeding becoming infected with abusive and manipulative conduct. As the United States Supreme Court has explained:

> [O]ur courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. . . . It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes. As guardians of the public welfare, our state and federal judicial systems strive to administer equal justice to the rich and the poor, the good and the bad, the native and foreign born of every race, nationality, and religion. Being manned by humans, the courts are not perfect and are bound to make some errors. But, if our courts are to remain what the Founders

---

[9] Indeed, various courts have recognized situations in which an assertion of the right of self-representation may properly be refused. *See Indiana v. Edwards*, 554 U.S. 164 (2008) (mental capacity); *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984) (unable or unwilling "to abide by rules of procedure and courtroom protocol"); *Savage v. Estelle*, 924 F.2d 1459, 1464 (9th Cir. 1990) (substantial speech impediment); *Morris v. State*, 667 So. 2d 982, 987 (Fla. Dist. Ct. App. 1996) (poor physical health).

> intended, the citadels of justice, their proceedings cannot and must not be infected with the sort of scurrilous, abusive language and conduct paraded before the [] trial judge in this case.

*Illinois v. Allen*, 397 U.S. 337, 346–47 (1970).

I quote *Illinois v. Allen* "to acknowledge that constitutional rights must be asserted and exercised in a manner not inconsistent with the trial judge's control over the orderly administration of justice in [her] court." *Blankenship v. State*, 673 S.W.2d 578, 589 (Tx. App. 1984). Indeed, it is well-established that trial judges must strike "an appropriate balance between the questioned individual constitutional right and the necessity for orderly procedure in the courts of the land." *Id*. "A court should, of course, vigilantly protect a defendant's constitutional rights, but it was never intended that any of these rights be used as a ploy to frustrate the orderly procedures of a court in the administration of justice." *United States v. Lawrence*, 605 F.2d 1321, 1325 (4th Cir. 1979).

"Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co*., 11 F.3d 450, 461 (4th Cir. 1993). A trial court's inherent duty to preserve the integrity of the judicial process must be unwavering, and where a trial court believes a defendant asserts the right of self-representation for a manipulative purpose, "[i]t is not the accused's ignorance of the law which is critical, but rather his apparent willingness to be untruthful with the trial court to effect his own designs, which [] evince[s] an intent to abuse the judicial process." *Blankenship*, 673 S.W.2d at 591 n.13.

The majority finds fault with the trial court citing a rule of professional responsibility, Rule 3.3, RPC, Rule 407, SCACR. I agree that a defendant is not "bound" by the rules of professional conduct, but that misses the larger point. No one has the *right* to lie to the court and manipulate the proceeding. That, I believe, is the point being made by the trial court in referencing the rules of professional conduct. *Cf. United States v. Stewart*, 931 F. Supp. 2d 1199, 1201 (S.D. Fla. 2013) (observing that a criminal defendant has no right, constitutional or otherwise, to be untruthful with the court).

I am persuaded by the Fourth Circuit's holding that a defendant asserting the right of self-representation assumes the responsibility of acting in a manner befitting an officer of the court. *See United States v. West*, 877 F.2d 281, 287 (4th Cir. 1989).

Even assuming the Court is nevertheless correct in refusing to apply the rules of professional conduct to Petitioner, the duty of candor to the tribunal set forth in Rule 3.3 "takes its shape from the larger object of preserving the integrity of the judicial system," and does not "displace[] the broader general duty of candor and good faith required to protect the integrity of the entire judicial process." *Shaffer Equip. Co.*, 11 F.3d at 458.

> [T]ampering with the administration of justice . . . involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.  Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants.  The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944).

"[T]he right of self-representation, unlike the right to counsel, is not a critical aspect of a fair trial but instead affords protection to the defendant's interest in personal autonomy." *State v. Turner*, 37 A.3d 183, 192 (Conn. 2012) (internal quotations and citation omitted).  "'At bottom, the *Faretta* right to self-representation is not absolute, and the 'government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'"  *United States v. Bush*, 404 F.3d 263, 271 (4th Cir. 2005) (quoting *Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000)).  "'A trial court *must* be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel.'"  *Id.* (emphasis added) (quoting *Frazier–El,* 204 F.3d at 560).  And where a trial judge makes a finding on the record that a defendant's "real intent [i]s to exploit the right of self[-]representation to manipulative or disruptive ends," such a factual finding is entitled to deference from an appellate court.  *Blankenship*, 673 S.W.2d at 590–91; *see United States v. Mackovich*, 209 F.3d 1227, 1237–38 (10th Cir. 2000) (a finding that an accused's assertion of the right of self-representation is manipulative in nature and thus an abuse of the judicial process is a factual finding).

Here, the trial court judged Petitioner's credibility and found Petitioner was

untruthful about his relationship with Mr. Grant in terms of having received the criminal law handbook; the payment of a retainer on Petitioner's behalf; and that Petitioner would be receiving out-of-court coaching from Mr. Grant during the trial. The record also reveals that in thanking Mr. Grant, Petitioner attempted to insinuate Mr. Grant had been untruthful with the Court about assisting Petitioner; plus, immediately after Mr. Grant left the courtroom, Petitioner expressly claimed Mr. Grant had lied to the trial court about the purported arrangement with Petitioner. Thus, in light of the ample support the record, I believe the Court oversteps in disregarding the trial court's findings. Particularly since "[i]n ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel because this right serves both the individual and collective good, as opposed to only the individual interests served by protecting the right of self-representation.." *Frazier-El*, 204 F.3d at 559 (quoting *United States v. Singleton,* 107 F.3d 1091, 1102 (4th Cir. 1997)).

**B.**

As mentioned at the outset, the majority holds today that "the only basis upon which a circuit judge may deny a defendant's pre-trial motion to proceed *pro se* is if the court determines the defendant has not knowingly, intelligently, and voluntarily waived his right to counsel." This case illustrates a defendant's attempt to "knowingly, intelligently, and voluntarily" lie and manipulate the proceedings. And perhaps the result today reflects the success of Petitioner's efforts.

For example, the majority finds fault with the trial court's continuing admonition on the dangers of self-representation "[r]ather than concluding the *Faretta* colloquy." The majority further notes that "[n]evertheless, the circuit judge continued her attempts to dissuade" Petitioner. First, I observe the *Bench Book for United States District Judges* instructs "[t]he model [*Faretta*] inquiry is to be followed by a 'strong admonishment that the court recommends against the defendant trying to represent himself or herself.'" *United States v. Powell*, 847 F.3d 760, 774 (6th Cir. 2017) (quoting *United States v. Williams*, 641 F.3d 758, 767 (6th Cir. 2011)). Further, as a practical matter, it seems to me the Court is placing our trial court judges in a catch-22. On the one hand, it will be contended that a full warning on the dangers of self-representation is an encroachment of the right of self-representation, just as the Court today implies; conversely, a lesser warning will be portrayed as inadequate. Criminal court judges are regularly confronting and navigating this very minefield. "[T]he right to counsel and its counterpart the right to proceed *pro se* put the trial court in a difficult position."

*Hsu v. United States*, 392 A.2d 972, 983 (D.C. 1978). "If a defendant asks for self-representation, the court risks reversal for denying the request or granting it." *Id.* (internal citations omitted).

The majority finds support for its reversal in "the circuit judge repeatedly not[ing] how intelligent and articulate she found [Petitioner] to be." I fail to see how Petitioner's intelligence provides a helping hand in reversing the trial court. I view Petitioner's intelligence as bolstering the trial court's finding of manipulation. In any event, Petitioner's intelligence in no manner demonstrates an abuse of discretion in the finding of manipulation.

I also strongly reject the majority's take on the trial court's consideration of attorney Grant's testimony. The majority approaches the issue as follows: "[Petitioner] contends the circuit judge impermissibly exceeded the scope of the *Faretta* inquiry by considering Grant's testimony to conclude [Petitioner] was attempting to manipulate the proceedings, thereby precluding him from proceeding *pro se*. We agree." The majority makes this finding in the face of Petitioner's acknowledgement that the trial court had the authority to summon Grant. Rather than criticize the trial court judge, I commend her. Petitioner's testimony gave the trial court judge concern, and she should be commended for wanting to have Grant, a local attorney, confirm Petitioner's testimony. *See Faretta*, 422 U.S. at 852 (Blackmun, J., dissenting) (observing " the right to assistance of counsel and the right to self-representation are mutually exclusive"); *Hsu*, 392 A.2d at 983 ("The only way to avoid the risk [of improperly denying one of these mutually exclusive rights], therefore, is for the trial court to conduct *a searching inquiry* into 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" (emphasis added) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938))).

Further, the majority incorrectly identifies this inquiry as relating only to the issue of "[Petitioner's] competence to represent himself," which according to the majority, "is entirely irrelevant to the issue of whether he effectively invoked his right of self-representation." To the contrary, the requirement for a decision to proceed *pro se* to be knowing and voluntary "ensures the defendant 'actually *does* understand the significance and consequences of a particular decision and [that] the decision is uncoerced.'" *Edwards v. Com.*, 644 S.E.2d 396, 402 (Va. Ct. App. 2007) (quoting *Godinez v. Moran,* 509 U.S. 389, 401 n.12 (1993)). Indeed, this line of questioning by the trial court was wholly relevant and quite necessary to prevent Petitioner "from taking advantage of and manipulating the mutual

exclusivity of the rights to counsel and self-representation," *Frazier-El*, 204 F.3d at 559, by later arguing his conviction should be reversed because his request to proceed *pro se* was unknowing and involuntary as it was premised upon Petitioner's belief that Mr. Grant would be providing him out-of-court assistance during his trial.

The majority's retort that the judge's "questioning of Grant should have been limited to discerning whether [Petitioner's] request was knowingly and voluntarily made" completely misses the mark, for no one has ever argued that Grant's testimony was primarily driven by his ability to assist the trial court in the narrow issue of a voluntary waiver. Grant never met with Petitioner. This relates to my view, made at the outset of this opinion, that the *Faretta* framework is more than formulaic responses to questioning; I do not view *Faretta* in isolation or as an obstacle to a trial court's duty to ensure the integrity of the proceedings. *See People v. Lewis*, 140 P.3d 775, 803 (Cal. 2006) (observing criminal defendants sometimes assert the right of self-representation for the purpose of "plant[ing] reversible error in the record).

At this point in the proceeding, the able trial judge made it clear she was poised to grant Petitioner's request, but her concern led her to summon Grant. I view the trial court's handling of the situation as a quintessential example of an appropriate exercise of discretion, as she took a reasonable and measured step to protect a defendant's right of self-representation while also ensuring the integrity of the proceeding. Grant's testimony flatly contradicted Petitioner's. Grant met with Petitioner's mother, not Petitioner. The trial court determined Petitioner had lied in an effort to manipulate the proceedings, and this quite naturally led the trial court's ruling to deny Petitioner's request to proceed *pro se*.

The trial court's finding of manipulation is a factual determination that rests with the trial court, not this Court. Our standard of review on a trial court's factual finding is abuse of discretion, not de novo. The Court references "review[ing] a circuit judge's finding of historical fact for clear error," but ignores that deferential standard of review when the Court engages in its own fact-finding by noting "we discern no attempt by [Petitioner] to disrupt or manipulate the process here." To the contrary, Petitioner's complete lack of candor with the trial judge, his lies, and his distortions were a clear indication to the trial judge that a self-represented Petitioner would continue to be a disruptive force during the trial of the case. Such

a conclusion is inescapably supported by facts in the record.[10]

The majority goes even further and states that a defendant's manipulation is "not enough" to deny a request to proceed *pro se*. The Court's support for this finding comes from a footnote in *State v. Barnes*, 413 S.C. 1, 774 S.E.2d 454 (2015), in which the *Barnes* majority responded to a statement by the *Barnes* dissent. Specifically, the *Barnes* majority's footnote observed there was no basis to deny a defendant's request for counsel simply because he had previously asserted (and obtained reversal of his conviction based on a violation of) his right to self-representation. *Id*. at 2 n.1, 774 S.E.2d at 455 n.1. The Court rejected the notion that "the erroneous denial of a defendant's sixth amendment right to self-representation at the first proceeding results in that defendant having a diminished sixth amendment right in a second trial." *Id*. at 7, 774 S.E.2d at 457. Here, we are not dealing with a request for counsel or multiple trials, so *Barnes* is procedurally and substantively inapposite. Further, in *Barnes*, the issue of manipulation by the defendant was introduced by the dissenting opinion of this Court; there was no factual finding of manipulative intent made by the trial court, as is the case here. In short, the Court simply disregards the applicable standard of review.

I wish to comment on what I believe is the majority's progression in its analysis that transforms the actual issue presented and reframes it to suit the majority's preference. I view this case as an appellate court reviewing a trial judge's effort to

---

[10] The majority opinion claims it does "not strip trial judges of their authority and discretion to maintain the integrity of the proceedings before them." In my judgment, the Court's holding does just that—it strips trial judges of authority and discretion to fully vet a defendant's motion to proceed *pro se* and instead mandates the trial court accept at face value whatever a defendant says. The majority opinion further assures that trial courts have "recourse" to prevent mischief or disruptive behavior. The majority's reasoning is premised on the notion that the trial court's concern with Petitioner's manipulation of the proceedings was speculative, which is a false premise. This reasoning ignores the reality that mischief and manipulative behavior had *already* occurred. The testimony of Mr. Grant (to which Petitioner has never objected) decisively debunked every statement Petitioner made about their purported relationship. Under these circumstances, the trial judge had the discretion (and "recourse") to nip in the bud Petitioner's effort to manipulate the proceedings.

protect a defendant's right to proceed *pro se* in a manner consistent with a trial judge's authority to ensure the integrity and orderly administration of justice in her court. Because there is clearly evidence to support the trial judge's finding of manipulation, I would affirm. Conversely, the majority maintains its narrow and categorical *Faretta* approach and then cautions trial courts from overstepping in warning of the dangers of self-representation. Trial judges, we are told, must safeguard a defendant's "right to represent himself and the almost sure disaster that will result from his self-representation." No one contends otherwise[11] but that misses the point of this case and appeal. The trial judge was not seeking to protect Petitioner from himself; she was seeking to protect the justice system from manipulation.

Trial court judges have become accustomed navigating the efforts of some defendants to game the system. It is the trial judge who must ensure the integrity of the court and the proceedings. That is accomplished by the trial court's exercise of discretion. That discretionary authority is essential to the proper functioning of the justice system, but courtesy of today's opinion, that discretion has been removed. What is the result of today's opinion—trial court proceedings are now "at the mercy of those who seek to disrupt the very process designed to protect them." *Blankenship*, 673 S.E.2d at 591 (Clinton, J., concurring).

I dissent.

**JAMES, J., concurs.**

---

[11] In his dissenting opinion in *Faretta*, Justice Blackmun observed, "If there is any truth to the old proverb that 'one who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a constitutional right on one to make a fool of himself." *Id*. at 852.