**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Norman Philip Browne, Appellant.

Appellate Case No. 2024-000872

Appeal From Charleston County
Deadra L. Jefferson, Circuit Court Judge

Unpublished Opinion No. 2026-UP-227
Heard April 7, 2026 – Filed May 13, 2026

**AFFIRMED**

Appellate Defender Wesley Chandler Norville, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General Brian Hollis Gibbs, all of Columbia, all for Respondent.

**PER CURIAM:** Appellant Norman Browne appeals his convictions for murder and grand larceny, arguing the trial court erred by allowing him to proceed to trial pro se because he did not knowingly and intelligently waive his right to counsel. We affirm.

## FACTS AND PROCEDURAL HISTORY

Browne was indicted for murder and grand larceny. Though Browne initially retained Michael O'Neal to represent him, O'Neal was relieved as Browne's counsel, and Laree Hensley was subsequently appointed to represent Browne. On January 18, 2024, Hensley filed a motion to be relieved as counsel and for Browne to proceed pro se.

The trial court heard the motion via WebEx on February 7, 2024; at the time of the hearing, a trial was scheduled for, and ultimately held on, the week of April 15, 2024.

The following week, the trial court entered an order relieving Hensley as counsel and allowing Browne to proceed pro se at trial. The trial court, with the consent of Hensley and Browne, ordered Hensley to remain as stand-by counsel at trial unless and until Browne retained other counsel.

Browne was subsequently tried before a jury, which resulted in his conviction on both charges. This appeal followed.

## STANDARD OF REVIEW

"Whether a defendant has knowingly, intelligently, and voluntarily waived his right to counsel is a mixed question of law and fact which appellate courts review de novo." *State v. Samuel*, 422 S.C. 596, 602, 813 S.E.2d 487, 490 (2018). This court "review[s] a [trial court's] findings of historical fact for clear error; however, we review the denial of the right of self-representation based upon those findings of fact de novo." *Id.* "In doing so, this [c]ourt must consider the defendant's testimony, history, and the circumstances of his decision, as presented to the [trial court] at the time the defendant made his request [to waive his right to counsel]." *Id.*

## LAW AND ANALYSIS

"The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel; it also guarantees a defendant the right to represent himself. A defendant must necessarily choose between these guarantees." *Hines v. State*, 443 S.C. 32, 38, 902 S.E.2d 377, 380 (2024).

To expressly waive the right to counsel, a defendant must assert they do not want counsel and do so "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 835 (1975). "To establish a valid waiver of counsel, *Faretta* requires the accused be: (1) advised of his right to counsel; and (2) adequately warned of the dangers of self-representation." *Prince v. State*, 301 S.C. 422, 423–24, 392 S.E.2d 462, 463 (1990).

Our supreme court has held that *Faretta* warnings are required whether the waiver of counsel is by "an affirmative, verbal request" or "by conduct." *Osbey v. State*, 425 S.C. 615, 619, 825 S.E.2d 48, 50 (2019) (quoting *State v. Roberson*, 382 S.C. 185, 187, 675 S.E.2d 732, 733 (2009)). The United States Supreme Court, however, has not prescribed a particular script courts must read to defendants to comply with *Faretta*. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (noting "[t]he information a defendant must possess in order to make an intelligent [waiver] . . . depends on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding").

"[A]n important aspect of the waiver analysis is at what point in the criminal process the warnings are given." *Hines*, 443 S.C. at 40, 902 S.E.2d at 381. "Where, as in *Faretta*, [a] defendant is venturing to represent himself at trial, the trial court must rigorously convey specific warnings of the pitfalls of going to trial without a lawyer." *Id.* "By contrast, a waiver of counsel at earlier stages of the proceeding need not be as exacting." *Id.*

Browne argues that the trial court did not adequately warn him of the dangers of self-representation. We hold that Browne, while not sufficiently advised of the dangers of self-representation, had sufficient background to understand the disadvantages of representing himself at trial. *See Wroten v. State*, 301 S.C. 293, 294, 391 S.E.2d 575, 576 (1990) ("While a specific inquiry by the trial judge expressly addressing the disadvantages of a *pro se* defense is preferred, the ultimate test [of the waiver analysis] is not the trial judge's advice but rather the defendant's understanding."); *id.* ("If the record demonstrates the defendant's decision to

represent himself was made with an understanding of the risks of self-representation, the requirements of a voluntary waiver will be satisfied.").

Here, the trial judge advised Browne that: (1) Browne had a right to legal counsel; (2) if Browne could not afford one, the court could appoint counsel; (3) that it is not prudent or advisable to represent oneself; and (4) that self-representation would be against Browne's interest and place him in significant jeopardy. However, because the hearing occurred around two months before trial, the trial judge's warnings warranted a thorough discussion of the dangers of self-representation— warnings on the specific dangers of Browne's decision rather than general warnings that danger typically comes with said decision. *Compare Hines*, 443 S.C. at 41, 902 S.E.2d at 381 ("The [United States] Supreme Court seems satisfied that at the guilty plea stage the defendant's 'eyes are open,' so long as he is warned that some general, undefined danger lurks ahead."), *with id.* at 40, 902 S.E.2d at 381 ("Where, as in *Faretta*, the defendant is venturing to represent himself at trial, the trial court must rigorously convey specific warnings of the pitfalls of going to trial without a lawyer."); *see also* 3 Wayne Lafave et al., *Criminal Procedure* § 11.5(c) (2025) (listing potential pitfalls trial courts should consider reviewing with defendants seeking to represent themselves at trial, such as the defendant being unable to "make effective use of such rights as the voir dire of jurors").

Thus, considering the timing of Browne's request and the scope of the warnings provided, we hold that the trial court did not provide Browne with sufficient warnings of the dangers of self-representation.

However, our inquiry does not end with the trial court's warnings and we must look to the record to determine whether Browne had sufficient background to understand the dangers of representing himself at trial. *See Watts v. State*, 347 S.C. 399, 402, 556 S.E.2d 368, 370 (2001) (noting that appellate courts, in finding that the trial court failed to adequately address the disadvantages of self-representation, "look to the record to determine whether [the defendant] had sufficient background [to understand the disadvantages of self-representation] or was apprised of his rights by some other source" (quoting *Prince*, 301 S.C. at 424, 392 S.E.2d at 463)).

> Factors [] courts have considered in determining if an accused had sufficient background to understand the disadvantages of self-representation include: (1) the accused's age, educational background, and physical and

mental health; (2) whether the accused was previously involved in criminal trials; (3) whether he knew of the nature of the charge and of the possible penalties; (4) whether he was represented by counsel before trial or whether an attorney indicated to him the difficulty of self-representation in his particular case; (5) whether he was attempting to delay or manipulate the proceedings; (6) whether the court appointed stand-by counsel; (7) whether the accused knew he would be required to comply with the rules of procedure at trial; (8) whether he knew of legal challenges he could raise in defense to the charges against him; (9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and (10) whether the accused's waiver resulted from either coercion or mistreatment.

*State v. Cash*, 309 S.C. 40, 43, 419 S.E.2d 811, 813 (Ct. App. 1992) (finding, after a review of the ten factors, that a defendant representing himself during a trial for first-degree criminal sexual conduct had sufficient background to understand the disadvantages of self-representation).

As to the first factor, at the time of trial, Browne was fifty years old, had completed high school, earned several automotive repair certifications for multiple automotive brands, and worked for a friend selling automotive tools. There is no evidence that Browne was either physically or mentally impaired.

As to the second factor, in his twenties, Browne received a fine for larceny and convictions for forgery and grand theft in California; there is no evidence in the record indicating whether those convictions were the result of guilty pleas or whether Browne was represented by counsel.

As to the third factor, the trial court informed Browne of the range of penalties for a murder conviction and the conviction's ineligibility for parole. Though there was no discussion on the range of penalties for a grand larceny conviction, the State informed the court at the hearing that Browne was charged with grand larceny. Further, Browne does not contend that he did not understand the nature of his charges. *See id*. at 44, 419 S.E.2d at 814 (noting that the prosecutor and pre-trial

hearing judge informed the defendant of his charge and that the defendant did not contend that he did not understand the nature of his charge).

As to the fourth factor, Browne was previously represented by O'Neal, followed by Hensley. Although there is no indication that either attorney advised Browne of the difficulties of self-representation, the record shows that Browne appreciated the difficulty of the case. At the hearing, Browne testified that he had prepared motions for Hensley to file with the court and wanted to relieve her after receiving purported statements from Hensley that "she works for the State, not for [Browne]" and "[would] represent the [c]ourt and its best interest, not [Browne]." His testimony demonstrates that he wanted to contribute to handling his case and believed, at the time of requesting relief, that he could do better representing his interests than his attorney would. *See id.* (noting that the defendant "appreciated the difficulty of his particular case" and that the defendant's testimony demonstrated his belief "he could do a better job of preparing his defense than [a] public defender could").

As to the fifth factor, there is no indication Browne, when seeking to represent himself, was attempting to delay or otherwise manipulate his criminal proceedings.

As to the sixth factor, the trial court appointed Hensley as stand-by counsel at trial; at the hearing, the trial court informed Browne that Hensley, as stand-by counsel, could answer any procedural questions Browne had throughout the trial. Hensley remained stand-by counsel throughout the trial.

As to the seventh factor, the record indicates that Browne knew prior to trial that he would have to comply with procedural rules. During the hearing, Browne testified that he was reading the rules of evidence and criminal procedure through the South Carolina Judicial Branch's website. Importantly, the trial judge, asking about Browne's understanding of the rules of evidence, described the rules of evidence as rules "that govern how a trial operates and . . . [that Browne would] have to utilize [] in order to operate in a courtroom . . . ." *See id.* at 45, 419 S.E.2d at 814 (noting that a defendant "knew he would have to comply with procedural rules" because he was "put [] on notice that he would have to follow the court's rules and that he would be at a disadvantage for not knowing the rules").

As to the eighth factor, Browne stated he was not informed of the potential defenses to the charges against him, but Hensley told the trial court that she discussed defenses with Browne.

As to the ninth factor, the trial judge and Browne's exchange consisted of the trial judge, among other things, (1) asking about Browne's age, education, employment, and prior criminal history; (2) inquiring into Browne's understanding of some of his constitutional rights, jury trials, rules of evidence, and range of penalty; and (3) expressing concerns about Browne representing himself at trial.

As to the tenth factor, there is no indication Browne was declining assistance of counsel as a result of either coercion or mistreatment.

The record demonstrates that Browne had sufficient background to understand the risks of self-representation when he decided to represent himself at trial. *See Hines*, 443 S.C. at 42, 902 S.E.2d at 382 (noting that, even if a trial judge did not sufficiently convey the dangers of self-representation to a defendant, appellate courts "may consider the whole picture before [them]" to determine if the defendant "understood the nuances of having legal representation"); *Wroten*, 301 S.C. at 294, 391 S.E.2d at 576 ("If the record demonstrates the defendant's decision to represent himself was made with an understanding of the risks of self-representation, the requirements of a voluntary waiver will be satisfied."). Therefore, we hold the trial court did not err by granting relief of counsel and allowing Browne to proceed to trial pro se.

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**